James WILLIAMS et al., Plaintiffs-Appellants,

v.

The KROGER COMPANY and Local Union No. 957, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants-Appellees.

No. 16774.

United States Court of Appeals
Sixth Circuit.

Dec. 1, 1966.

Paul H. Tobias, Cincinnati, Ohio, for appellants.

J. Mack Swigert, Cincinnati, Ohio, Thomas D. Heekin, Cincinnati, Ohio, on brief, William F. Sherman, Cincinnati, Ohio, of counsel, for Kroger Co.

Robert C. Knee, Dayton, Ohio, for Local Union 957, et al.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an appeal from an order granting summary judgment and dismissing a suit brought by some twenty employees against Local Union 957 and the Kroger Company under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (a).

The Kroger Company had warehouses in Cincinnati and Dayton, Ohio. Affiliated local unions of the International Brotherhood of Teamsters represented employees at each warehouse under separate contracts: Local 957 at the Dayton

warehouse and Local 100 at the Cincinnati warehouse.

The controversy arose when Kroger closed the Dayton warehouse and transferred its operations to Cincinnati. Appellants were given the choice of either receiving vacation and severance pay or of being transferred to Cincinnati, where they would lose the seniority rights acquired under Kroger's contract with Local 957. Appellants elected to be transferred but undertook to preserve their seniority rights under the collective bargaining agreement by filing a grievance with Local 957. This grievance was processed only through the initial steps of the grievance procedure. Both the Local 957 and Local 100 contracts provide for grievance procedure culminating in arbitration.

In their complaint appellants seek a declaratory judgment to the effect that under the Local 957 agreement they have retained seniority rights for purpose of job assignment. They also seek $10,000 in compensatory damages and $20,000 in punitive damages.

The collective bargaining agreement between Kroger and Local 957 contains the following provisions:

"*Section 5.4* The parties recognize that from time to time the needs of the business may require changes in operations, opening of facilities, closing of facilities, or transfers of certain operations. When an operation is transferred, jobs at the new location which become available within the first 60 days after the transfer will first be offered to the employees based on seniority. Employees transferred shall be placed at the bottom of the appropriate seniority list at the new location for the purpose of lay-off and rehire. It is further understood and agreed that employees shall experience no break in their Company service as a result of the transfer, and will receive any benefits at the new location to which their total length of service entitles them. It is recognized that such changes may result in disputes regarding seniority rights. If and when such a dispute involves another local union of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, such dispute shall be first considered under Step 3 of the grievance procedure."

The collective bargaining agreement between Kroger and Local 100 provides as follows: "On lay-offs, job assignments and rehiring the principle of seniority shall apply."

It appears from the averments of the complaint that Kroger gave advance notice that employees transferred to Cincinnati would go to the bottom of the seniority list for all purposes, including job assignment. The complaint avers as follows:

"At a meeting on or about October 19, 1964, Company officials of a rank lesser than Mr. Korengel, informed some of the Plaintiffs that after the transfer to Cincinnati, plaintiffs would not be assigned to the jobs which become available at Woodlawn as a result of the transfer, that they would lose their jobs and go to the bottom of the seniority list at Woodlawn for all purposes, including job assignment."

In dismissing the action, the District Judge said:

"About October 12, 1964, plaintiffs were informed by Kroger that Kroger contemplated closing the Willowburn [Dayton] warehouse and transferring its operation there to Woodlawn [Cincinnati]. They were informed on October 19, 1964, that they would lose their seniority rights for all purposes including job assignment if they accepted transfer and they were given the alternative of accepting severance and vacation pay in lieu of transfer.

"In transferring, plaintiffs moved out of the geographical or territorial jurisdiction of Local 957 in Dayton, and into the jurisdiction of Local 100 in Cincinnati. Local 100's agreement with Kroger provides that any transferees lose their seniority for practically all purposes. Local 100, of which plaintiffs are now members, is the ex-

clusive bargaining agent for its members.

"On November 11, 1964, plaintiffs filed a grievance with Local 957. This grievance has never been processed beyond initial steps even though Local 957 officials represented that they were processing it. Plaintiffs contend that their acceptance of the transfer was conditioned upon said grievance and their understanding that their rights would be determined pursuant to the procedure of Local 957. The amended complaint alleges further that the defendants and Local 100 held at least two secret meetings at which they decided not to process the grievance and that plaintiffs should lose their seniority rights.

"The affidavits of Frank Dull, President of Local 957, and Claude Stewart, Business Manager of Local 957, state that they did not process the grievance since they felt it was without merit and that plaintiffs were informed of this in March, 1965. They further stated that they met with Kroger officials prior to and after the grievance was filed in order to work out the problems forming the basis of it. They have no longer attempted to represent plaintiffs since they are now members of Local 100.

"There are also on file the affidavits of R. D. Wuerfel, Personnel Manager of Kroger, and W. R. Bedell, of Kroger's Labor Relations Department. The former states that plaintiffs were informed of the consequences of the transfer and voluntarily made it and that Kroger has never refused to consider the grievance under the procedure of the Local 100 contract. The latter states that at the grievance meeting in Indianapolis on April 6 and 7, 1965, the dispute forming the basis of this suit was not presented and Kroger has not been requested to discuss it.

"Plaintiffs have also filed a second grievance under the procedure of the Local 100 contract. This grievance has not been resolved but is in the process of consideration."

 We agree with the District Judge that Kroger has followed the procedure required by the above quoted Section 5.4 of its contract with Local 957. Appellants therefore have failed to state a claim for breach of contract against Kroger for which relief can be granted under § 301. There being no showing of bad faith or dishonesty of purpose on the part of the Union, appellants cannot recover against the Union under § 301 for its failure to process a grievance which it found to be without merit. Humphrey v. Moore, 375 U.S. 335, 84 S. Ct. 363, 11 L.Ed.2d 370, rehearing denied, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655; Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048.

We conclude that the district court was correct in granting summary judgment.

Affirmed.