L. D. PRICE, Plaintiff-Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-TION COMPANY; System Federation No. 114 Railway Employees; Department, AFL–CIO; International Brotherhood of Firemen, Oilers, Helpers, Roundhouse and Railway Shop Laborers; and Willie T. Thomas, Defendants-Appellees.

Nos. 77–1322, 77–2433.

United States Court of Appeals,
Ninth Circuit.

Nov. 24, 1978.

Rehearing Denied Dec. 29, 1978.

Jack Siedman (argued), San Francisco, Cal., for plaintiff-appellant.

William F. Adams (argued), San Francisco, Cal., William J. Hickey (argued), Washington, D. C., for defendants-appellees.

Before SNEED and KENNEDY, Circuit Judges, and DUMBAULD,* District Judge.

SNEED, Circuit Judge:

This suit has its origin in an event which occurred on May 25, 1972. The plaintiff, Price, then employed by defendant, Southern Pacific Transportation Co. (SP), left without authority the area within which he worked to get "a bite to eat" and while away was involved in an automobile accident that resulted in his hospitalization for a period of time and prevented an immediate return to work.

As it turned out Price never returned to work. In condensed form the subsequent events are as follows. After several postponements in keeping with Price's wishes, and several failures on the part of Price to keep appointments to discuss his case with union officials, a hearing pursuant to the collective bargaining agreement between SP and International Brotherhood of Firemen, Oilers, Helpers, Roundhouse and Railway Shop Laborers (Union) was held on October 24, 1972. Thomas, Price's brother-in-law and Local Chairman of the Union, attended the hearing and at Price's request represented him in the proceedings. At the hearing Price admitted that his absence from the work area violated Rule 810 of SP's General Rules and Regulations and a foreman at the SP yard testified that Price had no authority to leave the yard on that day. Although the record of this case reflects that absences from the work area to get "a bite to eat" without specific authority were not rare events, neither Thomas nor Price developed this point at the October 24, 1972 hearing. After the hearing was closed SP notified Price on October 27, 1972 that he was discharged for violating Rule 810.

No grievance in behalf of Price was filed by Thomas or Price. However, Thomas, by reason of a specific request by Price, wrote a letter to SP requesting reinstatement of Price on a leniency basis. The request was denied on March 8, 1973. Well over a year later, in July 1974, Price filed suit in state court against SP for wrongful discharge. In due course, this suit was removed on motion of SP to the federal district court where on May 7, 1975 an amended complaint was filed. On April 29, 1976, Price's second amended complaint was filed in which he sought recovery against SP and the Union on the authority of *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The second amended complaint set forth five causes of action, two against each defendant and one against both defendants. The first against SP asserted, as did the original complaint, a wrongful discharge in violation of the Railway Labor Act, 45 U.S.C. § 152, in which Price's unauthorized absence was used as a "pretext" to deprive him of a "coordination allowance" provided to certain employees by reason of a mediation agreement following a reduction in force by SP. The second cause of action against SP

---

* Honorable Edward Dumbauld, Senior United States District Judge, for the Western District of Pennsylvania, sitting by designation.

merely alleged a wrongful discharge by reason of the collective bargaining agreement and "federal law" and sought reinstatement with full seniority and fringe benefits. The third cause of action was asserted against both the SP and the Union and charges they "conspired and colluded . . . to unfairly, inadequately, and discriminatively represent" Price at all stages of the grievance procedure. The remedy sought was recovery of the "coordination allowance." The fourth and fifth causes of action are directed against the Union and charge it, as well as Thomas, with perfunctory, inadequate, unfair, and discriminatory representation. All relief heretofore described is set forth in general prayer at the conclusion of this second amended complaint.

After discovery and the submission of affidavits the district court, in August 1976, granted SP's motion for summary judgment and denied that of the Union. In May 1977 the district court reversed itself and granted summary judgment to the Union. In these appeals Price contends the district court erred in granting all defendants summary judgment. We have reviewed the record carefully and, although the Union's representation of Price does not reflect impassioned zeal, we affirm the judgments of the district court.

## I.

## LIMITATIONS.

■ At the threshold we are met with a limitations question. If the suit against the Union and Thomas is untimely, suit against the SP is also improper because Price's claims against SP are within the exclusive jurisdiction of the National Railway Adjustment Board under the teaching of *Andrews v. Louisville & Nashville R. R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Under *Andrews* even "wrongful discharge" cases remain subject to the Railway Labor Act's mandatory grievance procedure. Price's failure to utilize this procedure does not serve to open the doors of the federal court to him.

Access to such court depends upon an allegation by the discharged employee that the union of which he is a member breached its duty of fair representation. *See Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970). Joinder of the employer is permissible when, as in this case, the employee alleges that the employer is implicated in the union's breach of its duty of fair representation. *See Kaiser v. Local No. 83,* 577 F.2d 642 (9th Cir. 1978). Price's allegations in this case make it unnecessary to decide whether in a case subject to the Railway Labor Act the mere "taint" of the discharge procedure by the union's breach of its duty of fair representation provides a basis for joinder of the employer carrier in the employee's suit against the union. The issue was left open in *Czosek v. O'Mara, supra. Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), a case governed by Section 301, of the Labor Management Relations Act, 29 U.S.C. § 185, may suggest an affirmative answer, but the issue need not be confronted in this case.

The issue is simply whether Price's cause of action against the Union was brought within the period allowed by the applicable statute of limitations. Resolution of this issue turns out to be somewhat complex. As will appear, we hold that Price's claim against the Union is not barred by limitations.

■ We commence with the proposition that the timeliness of Price's suit against the Union and Thomas is governed by the "appropriate" state statute of limitations. *International Union, UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Choice of the "appropriate" state statute requires that the cause of action against the Union be characterized properly. Characterization is a federal question. *Butler v. Local 823, International Brotherhood of Teamsters,* 514 F.2d 442, 446 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).

■ Proper characterization of an action charging breach of a duty to provide fair representation is a matter of dispute within

the Circuits. *Id.* at 447. The First and Fifth Circuits have characterized the action as one in tort. *de Arroyo v. Sindicato de Trabajodores Packinghouse, AFL–CIO,* 425 F.2d 281, 286–87 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970); *Sanderson v. Ford Motor Co.,* 483 F.2d 102, 114 (5th Cir. 1973). On the other hand, two circuits, the Second and Eighth, characterize it as one on a written contract while the Sixth treats it as one "created by statute." *Butler v. Local 823, International Brotherhood of Teamsters, supra* (contract); *Abrams v. Carrier Corp.,* 434 F.2d 1234 (2d Cir. 1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (contract); *Gray v. Heat & Frost Insulators & Asbestos Workers Local 51,* 416 F.2d 313 (6th Cir. 1969) (statute). The preference for the shorter tort limitations period rests on the resemblance of the duty of fair representation to duties frequently imposed by tort law and a desire to protect the unions from many claims against which, because of the passage of time, it is difficult to defend. The longer written contract period rests on a desire to subject both employer and union to the same limitations period so as to afford complete relief to the employee and to permit a fair apportionment of damages between employer and union.

Each position has merit. We believe, however, we should look to the source of the union's duty of fair representation for aid in characterizing the action for limitations purposes. That source is, inescapably, "a federal obligation which has been judicially fashioned from national labor statutes." *Abrams v. Carrier Corp., supra,* at 1251. We recognized this recently in *Kaiser v. Local No. 83, supra,* when we observed:

"In *Vaca [Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)] and *Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) the Supreme Court has made clear that an employee's action against his union *for violation of the statutory duty of fair representation* is separate and distinct from the contractual duty of an employer both as to the origin of the liability and the amount of damages." (italics added).

577 F.2d at 645. Thus, we characterize the union's duty of fair representation as one having its source in national labor statutes.

Next we must select the "appropriate" state statute of limitations for a cause of action asserting the breach of the duty so characterized. This selection is based on a federal choice of law. Little choice in fact is required in selecting the state from which the proper statute will be designated. Only California has a claim. Price resided in California, his place of employment was San Francisco, and all the pertinent events occurred within the San Francisco Bay Area. The choice of the proper California statute of limitations is little more difficult. We hold that the proper statute is Cal.Civ. Proc.Code § 338 which requires that "an action upon a liability created by statute, other than a penalty or forfeiture" be commenced within three years. The California Supreme Court has stated that the term a "liability created by statute" is one in which no element of agreement enters and one which the law creates in the absence of an agreement. *Gardner v. Basich Brothers Construction Co.,* 44 Cal.2d 191, 194, 281 P.2d 521, 522 (1955). This describes the duty of fair representation precisely.

Although we express no opinion with respect to the California statute applicable to an employee's cause of action against an employer in a duty of fair representation case, we recognize that a period other than three years could be held applicable. Thus, as against the employer, Cal.Civ.Proc.Code § 337, the four year statute applicable to actions on written contracts, might well be chosen as the appropriate statute. We only mention this possibility to make clear that our choice of California's three year statute was not dictated by a desire to make the same statute applicable to the causes against both the employer and union. In our view uniformity must yield to the results of proper characterization.

To apply California's three year statute to the facts of this case is relatively simple. Initially we must determine when Price's alleged cause of action accrued; thereafter

we must confront the issue whether Price's claim against the Union and Thomas should be treated as having been filed in July 1974, the date of filing Price's state court suit against SP, or May 7, 1975, the date the Union was added as a defendant, or April 29, 1976, the date Price's second amended complaint was filed. These determinations rest on federal law. *Butler v. Local 823, International Brotherhood of Teamsters,* supra, at 449.

■ As to accrual of Price's alleged cause of action against the Union we hold it accrued on March 8, 1973, the date SP denied Price's request for reinstatement on a leniency basis. No action by the Union of any consequence occurred thereafter and it marks the point at which any injury to Price allegedly caused by the Union became fixed and reasonably certain.

■ Whether Price's suit against the Union was commenced within three years depends on whether it was commenced in either 1974 or 1975. If commencement occurred no earlier than April 29, 1976, the date Price's second amended complaint was filed, his action against the Union and Thomas is barred. Our examination of the record leads us to conclude that Price's action was commenced no later than May 7, 1975, the date his first amended complaint was filed. At that point the Union clearly had notice that it was to be charged with a breach of its duty of fair representation. This is clearly within three years of March 8, 1973; thus, Price's suit against the Union is not barred by limitations. It follows, therefore, that the joinder of SP was permissible.

## II.

### THE MERITS.

■ Discussion of the merits of Price's claims shall not be lengthy. We have read the record, including the depositions of Price and Thomas, and we conclude that, when viewed in a light most favorable to Price, there exists no genuine issue of material fact and that the trial court properly granted summary judgment to SP and the Union. No showing exists that SP's discharge of Price was a "pretext" to avoid paying him a "coordination allowance." Equally absent is a showing that SP previously had condoned absences from the place of duty such as was that of Price. The affidavits of Price's fellow employees demonstrate that enforcement of Rule 810 may have been lax, but that is not enough to cause SP's discharge of Price to be wrongful. SP was properly granted summary judgment.

While it would have been better had the trial court deferred its summary judgment in favor of SP until it was prepared to act on the Union's motion for summary judgment, under the circumstances of this case the failure to do so constitutes no error. The record reflects no facts suggesting that SP conspired with the Union to effect a wrongful discharge of Price. Nor can it be argued that SP's discharge is "tainted" by a breach of the Union's duty of fair representation. The record provides no showing of ill will, prejudice, or deliberate bad faith on the part of the Union in representing Price. *See Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Nor does it show unintentional conduct "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *See Robesky v. Qantas Empire Airways Ltd.,* 573 F.2d 1082, 1090 (9th Cir. 1978). Rather it reflects an employee of limited education indifferently cooperating with his union officials in avoiding his discharge and a union performing its duty of representation in a manner that was better than inadequate, but less good than zealous. This falls far short of constituting irrational, intentional, or egregiously unfair unintentional, conduct on the part of the Union. We, therefore, conclude that the trial court properly granted summary judgment to the Union. It did not violate its duty of fair representation.

AFFIRMED.