Stephen **BOUDREAUX**, Plaintiff,

v.

**VULCAN MATERIALS COMPANY, a Foreign Corporation, and International Association of Machinists and Aerospace Workers District 10, Defendants.**

No. 78–C–384.

United States District Court,
E. D. Wisconsin.

Feb. 5, 1980.

**348**

M. L. Eisenberg & Associates by M. L. Eisenberg, Milwaukee, Wis., for plaintiff.

Quarles & Brady by George K. Whyte, Jr., Mary Pat Koesterer, Milwaukee, Wis., for Vulcan.

Goldberg, Previant, Uelmen, Gratz & Miller by Robert E. Gratz, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is an action arising under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which the plaintiff seeks damages and reinstatement based on the alleged violation of the collective bargaining agreement by the defendant employer and the defendant union's alleged violation of its duty fairly to represent the plaintiff. The matter is before me on both defendants' motions for summary judgment. For reasons which follow, these motions will be granted, and the complaint will be dismissed.

## FACTUAL BACKGROUND

The defendant International Association of Machinists & Aerospace Workers District 10 (union) is and was at all times pertinent to this action the exclusive bargaining representative for employees, including the plaintiff, of the defendant Vulcan Materials Company (Vulcan). The collective bargaining agreement between Vulcan and the union provides that no employee covered by the agreement may be discharged except for "just cause." The agreement also establishes a four step grievance procedure culminating in binding arbitration for the resolution of disputes arising between employees and Vulcan. It is undisputed that the grievance procedure is the exclusive means for resolving employee complaints against Vulcan.

Vulcan hired the plaintiff on May 7, 1974, as a motor operator. On January 5, 1977, while working the third shift, the plaintiff was instructed by the foreman to assist the crane operator in performing certain tasks. Shortly thereafter, the plaintiff complained to the foreman that he was performing the assigned work without the assistance of the crane operator and stated that he would not continue unassisted. The foreman told the plaintiff either to perform his assigned duties or to go home. When the plaintiff stated that he would not continue unassisted, the foreman suspended him pending an investigation by Vulcan of his "insubordinate" conduct. The plaintiff then asked his union steward to intervene. After speaking with the foreman, the union steward advised the plaintiff to go home because the foreman had threatened to call the police if the plaintiff did not leave the premises. At this point, the plaintiff went home.

Later that morning, on January 5th, Vulcan's personnel manager called the plaintiff and instructed him to appear at a meeting scheduled at 10:30 A.M. to discuss with representatives of the union and the company the events of the night before. When the plaintiff arrived, he was interviewed by a union representative, Rick Mijokovich. According to uncontested statements in Mr. Mijokovich's affidavit, the plaintiff admitted that he had refused to perform the work assigned to him by the foreman and that he had directed abusive and profane language at the foreman. Mr. Mijokovich's affidavit also states that the plaintiff made similar admissions at the meeting with company officials, which Mr. Mijokovich attended. At the conclusion of this meeting, the plaintiff was informed that he was terminated for insubordination.

Directly after the meeting, Mr. Mijokovich filled out a grievance protesting the plaintiff's termination, which he and the plaintiff signed. The grievance was then properly filed with Vulcan; however, after interviewing other employees on the third shift who confirmed that the plaintiff had been abusive and refused assigned work, and after discussing the matter with the union's business manager, Mr. Mijokovich concluded that the grievance was meritless and withdrew it on January 10, 1977. Mr. Mijokovich informed the plaintiff of this the same day.

On January 12, 1977, the plaintiff filed a charge with the National Labor Relations Board (Board) against the union alleging a

violation of the union's duty to represent him. After investigating the background events, the Board advised the plaintiff that it would dismiss the charge if it were not withdrawn. The plaintiff withdrew the charge.

In November 1977, the plaintiff wrote the union stating that he had been successful in his unemployment compensation claim and asking the union to renew the grievance protesting his termination. Thereafter, the plaintiff was advised that his grievance had been concluded, that the collective bargaining agreement did not contain a provision for filing a new grievance, and that Vulcan had refused to reopen the matter.

The plaintiff filed this action in June 1978, charging Vulcan and the union with the above-mentioned violations of 29 U.S.C. § 185. Specifically, the plaintiff alleges that his termination was not for "just cause," that the union failed to represent him fairly, and that the union and Vulcan conspired to effect his termination. The complaint seeks $100,000 in damages, reinstatement with full seniority back to January 5, 1977, and costs and attorneys' fees.

## II. UNION'S MOTION FOR SUMMARY JUDGMENT

██ Even where the contractual grievance procedure is the exclusive means for settling employee-employer disputes, it is settled that an employee does not possess an absolute right to have his grievance prosecuted to arbitration by his collective bargaining representative. *Vaca v. Sipes*, 386 U.S. 171, 190–95, 87 S.Ct. 903, 916–19, 17 L.Ed.2d 842 (1967). Rather, a union may refuse to invoke the grievance procedure and may even withdraw a meritorious grievance before submission to arbitration, if it is acting in good faith and not arbitrarily or discriminatorily. *Id.* at 194, 87 S.Ct. at 918; *Moore v. Sunbeam Corp.*, 459 F.2d 811, 820 (7th Cir. 1972). It therefore follows that a union is deemed to be acting in good faith when it decides to withdraw a grievance after it has investigated the underlying circumstances and has honestly concluded that the grievance lacks merit.

*See, e. g., Lomax v. Armstrong*, 433 F.2d 1277, 1280–81 (5th Cir. 1970); *Williams v. Kroger Co.*, 369 F.2d 85, 87 (6th Cir. 1966).

In the case at bar, the plaintiff has challenged the union's decision to withdraw the grievance protesting his discharge on two grounds: (1) Mr. Boudreaux contends that his grievance had merit because he was ultimately successful in his unemployment compensation claim; and (2) Mr. Boudreaux alleges that both his discharge and the withdrawal of his grievance were the product of a conspiracy between his union representatives and Vulcan which was based on a discriminatory motive. *See Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 873 (3rd Cir. 1972). On the record before me, I conclude that these contentions are without merit.

██ Regarding the first of these arguments, it is clear that the plaintiff's recovery of unemployment compensation benefits has no probative impact on the question whether there was "just cause" for his termination: "Under the enlightened social and economic objectives of unemployment compensation, an employee may be entitled to benefits even though his employer had the contractual right to discharge him from his job." *Cheese v. Afram Brothers Co.*, 32 Wis.2d 320, 325, 145 N.W.2d 716, 719 (1966). Moreover, averments in the Mijokovich affidavit, which the plaintiff's affidavit fails to place in genuine dispute, fully demonstrate that the union was justified in believing that the grievance lacked any merit. Not only did the plaintiff admit to Mr. Mijokovich that he had refused to perform his assigned duties and had used abusive and profane language in his disagreement with the foreman, but Mr. Mijokovich's further interviews with employees working the third shift January 5th revealed that the plaintiff's conduct supported the charge of insubordination. Certainly at this point the union was entitled to conclude that further action on the grievance would be fruitless; having reached this conclusion in a non-arbitrary fashion, the union was free to withdraw the grievance. The union supplemented its good faith demeanor by immedi-

ately notifying the plaintiff of its decision to withdraw the grievance.

In his affidavit, the plaintiff has utterly failed to state any specific facts substantiating the allegation in his complaint that the union and Vulcan conspired against him. The plaintiff has attempted to counter the Mijokovich affidavit with the affidavit he submitted in support of his complaint filed with the Board; the latter affidavit is in no way responsive to Mr. Mijokovich's allegations. Indeed, the plaintiff's affidavit relies almost exclusively on rumor, suspicion, and hearsay; such statements may not be considered in determining whether the plaintiff has "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure. The plaintiff's deposition testimony does not provide a factual basis for the conspiracy charge. In response to direct questions concerning the existence of the alleged conspiracy, Mr. Boudreaux admitted that he did not know whether a conspiracy existed within the union or between the union and Vulcan. Since the record is barren of any facts even tending to show the existence of a conspiracy, I find that no genuine issue of material fact exists as to this allegation.

My conclusion that the union fairly represented the plaintiff is supported by the Board's disposition of the charge that Mr. Boudreaux had filed with it in which he complained that the union had not represented him fairly; after conducting its own investigation, the Board advised Mr. Boudreaux to withdraw the charge, which he did. Although the Board's disposition certainly has no res judicata effect here, it tends to underscore the onus that Mr. Boudreaux has of showing the existence of a genuine dispute of material fact. *See Smith v. Local No. 25, Sheet Metal Workers Int'l Ass'n*, 500 F.2d 741, 748 n. 4 (5th Cir. 1974). In light of the law to be applied to this case, and since there are no facts genuinely in dispute, I hold that the union "is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.

## III. VULCAN'S MOTION FOR SUMMARY JUDGMENT

[7] The plaintiff may recover against Vulcan only if he can establish that the union wrongfully refused to process his grievance, since then his discharge would have been in violation of the collective bargaining agreement. *Vaca v. Sipes, supra*, 386 U.S. at 185, 87 S.Ct. at 914. In the absence of a finding that the union's failure to exhaust the grievance procedure was a violation of its duty of fair representation, Vulcan's affirmative defense raising the failure to exhaust the grievance procedure is controlling. *See also Waters v. Wisconsin Steel Workers of Int'l Harvester Co.*, 427 F.2d 476, 489–90 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Accordingly, Vulcan's motion for summary judgment must be granted.

## CONCLUSION

Therefore, IT IS ORDERED that the motions of both defendants for summary judgment be and hereby are granted.

IT IS ALSO ORDERED that the complaint and this action be and hereby are dismissed.