**HAWAII CARPENTERS' TRUST FUNDS (Health & Welfare Trust Fund by its Trustees, Raymond Nagata, Albert Hamamoto, Henry Iida, Roy Iwamoto, Robert Kaya, Fred Shelton, Harold Makilan, Herman Nascimento, Lester Tamura, and Mitsuo Yakuma), et al., Plaintiffs,**

v.

**WAIOLA CARPENTER SHOP, INC. a Hawaii corporation, and Tanaka and Uyehara, Inc., a Hawaii corporation, now doing business as Waiola Countertop, formerly doing business as Waiola Carpenter Shop, Defendants.**

Civ. No. 83–0253.

United States District Court,
D. Hawaii.

Dec. 5, 1985.

Joseph A. Kinoshita, Ashley K. Ikeda, Wesley H. Ikeda, Honolulu, Hawaii, for plaintiffs.

Gregory Sato, Honolulu, Hawaii, for defendants.

ORDER GRANTING DEFENDANT TANAKA AND UYEHARA, INC.'S MOTION FOR SUMMARY JUDGMENT

PENCE, Senior District Judge.

Defendant's Motion for Summary Judgment with respect to Counts III and IV came on for hearing before this court on November 6, 1985. The court, having considered the motion and the memoranda submitted in support thereof and in opposition thereto, and having heard the oral arguments of counsel, and being fully advised on the premises herein, finds as follows:

In late 1979, Calvin Tanaka and Duffy Uyehara purchased the assets of Waiola Carpenter Shop, Inc. from their retiring boss, Robert Imai. The transaction can be described as arms-length, as both were represented by counsel. Tanaka and Uyehara funded their corporation with $5,000 purchases of stock and loans of $10,000.

After the change of ownership, Tanaka and Uyehara established credit under the new corporate name (Tanaka & Uyehara, Inc. dba Waiola Carpenter Shop (now Waiola Countertop)), obtained business and tax licenses with the U.S. and State, and opened banking accounts in the corporation's name. In his affadavit, Uyehara states that Waiola Carpenter Shop was used solely as a trade name—neither he nor Tanaka made any attempt to cover up the sale or prevent public disclosure. The changeover was effective April 30, 1980.

Tanaka and Uyehara continued to perform fabricating work in the shop, while Thomas Lee was hired to perform Imai's former duties—delivery of product and pick-up of raw material. Lee was never a member of the union, and was never promised trust fund benefits. Following Lee's departure from T & U, the company continued to hire non-union help.

After the sale in April, Tanaka & Uyehara, Inc. (T & U) continued to receive monthly trust fund assessment notices from the Hawaii Carpenters' Trust Funds. The assessments were based on the 1978 to 1981 Collective Bargaining Agreement between the Union and Robert Imai; the former owner. At the time Tanaka and Uyehara negotiated to buy Waiola's assets, the subject of the Agreement never came up. To Tanaka, "it did not seem important." T & U's Memorandum in Support of Summary Judgment, Affidavit of Duffy Uyehara, at 6. At any rate, from May of 1980 through December of 1981, T & U continued the prior practice of paying trust fund contributions and reporting the hours worked of its employees.

On December 23, 1981, T & U received a letter from the Trust Funds demanding payment of delinquent contributions. In January of 1982, former Carpenters' Union business agent Eddie Cantera told Uyehara there was no need for T & U to belong to the funds since none of T & U's employees belonged to the Union. According to Uyehara, his conversation with an attorney for the trust funds confirmed this as well. As a result, T & U refused to make trust fund contributions or report hours worked beginning January 1982.

During this time, T & U joined the Wood Products Association of Hawaii (WPA). Uyehara states T & U joined the association to help "drum up" business. In July of 1981, Percy Ching, the President of the WPA, asked Uyehara to sign a "Survey Form" (also referred to as a power of attorney). Uyehara completed the form, "mainly out of friendship with Mr. Ching," and was given the impression that each company would have the option of signing

their own agreement. According to plaintiffs, the form gave T & U no such option, but authorized the WPA to negotiate an agreement on T & U's behalf with the Millwork industry union.

The court notes that at the hearing, it became clear that Percy Ching advised Tanaka and Uyehara extensively on labor matters. In fact, both parties agreed Mr. Ching may have been practicing law without a license.

The WPA and Carpenters' Union commenced negotiations in August 1981 to renew the Mill Cabinet Agreement for 1981–84. A dispute arose, resulting in a strike and lawsuit by the Union against the WPA and its members. That suit was eventually dismissed, the strike settled, and an Agreement was entered into February 25, 1983.

On January 14, 1982, T & U withdrew as a member of the WPA. The letter stated that T & U "had previously given the Association our power-of-attorney for bargaining purposes without understanding the total implications of that action." On the 28th of the same month, both Tanaka and Uyehara resigned from the Carpenters' Union as well.

Finally, the court notes that in late March of 1983, Carpenters' Union business agent Melvin Fujii visited T & U with the collective bargaining agreement between the union and the WPA. Due to confusion over exactly which companies were members of the WPA, the union sought individual company signatures. When Duffy Uyehara refused to sign, the business agent left. Several days later, the same sequence of events was repeated when another Carpenters' Union business agent visited the premises of T & U. Again, Uyehara refused to sign the agreement. See Supplementary Memo in Support of Summary Judgment, Affadavit of Duffy Uyehara at 2, Affadavit of Calvin Tanaka at 2.

## DISCUSSION

Defendant seeks summary judgment on Counts III and IV. Count III involves obligations to the trust fund under the 1978–81 Collective Bargaining Agreement, while Count IV is addressed to T & U's obligation to contribute pursuant to the 1981–84 Collective Bargaining Agreement. First, defendant contends that the absence of a written agreement relieves T & U of any obligations to make contributions under the 1978–81 Agreement. Next, defendant argues T & U is not obligated under the 1981–84 Mill Cabinet Agreement since T & U withdrew from the WPA prior to the execution of the agreement. Finally, defendant maintains the applicable state statute of limitations bars plaintiff's ERISA claims.

### Standard of Review

The standard for granting summary judgment is well established. Summary judgment is appropriate only when the pleadings and other submissions show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1260 (9th Cir.1983).

### The 1978–81 Collective Bargaining Agreement

The record reveals no dispute regarding the absence of a written agreement between T & U and the trust funds. Defendants rely on *Maxwell v. Lucky Const. Co., Inc.*, 710 F.2d 1395 (9th Cir.1983), for the proposition that without a written agreement between the trust funds and *T & U*, T & U is relieved of any obligation to contribute their predecessor may have had vis-a-vis the funds. *Maxwell* dealt with Section 302 of the LMRA (29 U.S.C. § 186), and noted that under section 302(c)(5), the basis on which an employer is to pay trust contributions must be specified in a written agreement. Since the only written basis for contributions is the 1978–81 Collective Bargaining Agreement, and that was signed by Imai for Waioala Carpenter Shop, Inc., the trust funds are effectively estopped from asserting T & U must contribute to the funds. See *Moglia v. Geoghegan*, 403 F.2d 110 (2nd Cir.1968), *cert. den.*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969); *Thurber v. Western*

*Conference of Teamsters Pension Plan,* 542 F.2d 1106 (9th Cir.1976).

■ To avoid the above line of reasoning, Plaintiffs argue that T & U is Waiola's successor, and therefore T & U must make trust fund contributions under their predecessor's collective bargaining agreement.[1] Regarding the Successorship Doctrine, Professor Morris writes that any determination of successorship "turns on a number of related inquiries, all focused upon the degree of continuity between the old and the new employer's business enterprise." *Developing Labor Law* (2nd Ed.1983) at 712–713. These inquiries include the continuity in the employing industry and the continuity in the appropriateness of the bargaining unit.

In *Burke v. French Equipment Rental,* 498 F.Supp. 94, 98 (C.D.Cal.1980), *rev'd in part, aff'd in part,* 687 F.2d 307 (9th Cir. 1982), the court examined whether an individual who is the sole shareholder, president and only employee of a corporation could be included in a bargaining unit of employees of *that* corporation. The court wrote, "it is likely that … French would be excluded, either because he is an employer or a supervisor, … or because he represents management. See generally *NLRB v. Yeshiva University,* 444 U.S. 672 [100 S.Ct. 856, 63 L.Ed.2d 115] (1980); *Beasley v. Food Fair of North Carolina, Inc.,* 416 U.S. 653 [94 S.Ct. 2023, 40 L.Ed.2d 443] (1974)." *Id.* In the instant case therefore, the fact that Tanaka and Uyehara have become supervisors appears to remove them from the bargaining unit.

■ Authority for the court's finding that T & U is not Waiola's successor is provided by the 1978–81 Collective Bargaining Agreement's definition of the bargaining unit,[2] as well as the definition of supervisor set forth in § 2(11) of the NLRA, 29 U.S.C. § 152(11). The term "supervisor" is defined in § 2(11) of the NLRA to mean:

any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment. 29 U.S.C. § 152(11) (1976).

In *Arizona Public Service Co. v. N.L. R.B.,* 453 F.2d 228 (9th Cir.1971), the court instructed that "Section 2(11) is to be read in the disjunctive, and the presence of any one of the enumerated powers is sufficient to render an employee a 'supervisor.' [citation omitted]." *Id.* at 232; see also *McDonnell Douglas Corp. v. N.L.R.B.,* 655 F.2d 932, 935 (9th Cir.1981). While plaintiff argues that the question of whether

---

**1.** As for plaintiff's argument that T & U adopted or assumed the 1978–81 Agreement, their position is undermined first by Judge King's rejection of the same argument in *Hawaii Carpenters Trust Funds, et al. v. Oshiro Contractor, Inc.,* Civ. No. 79–0622; and second, the portion of the case they rely on is dicta contained in a footnote. Plaintiffs cite *Ariz. Laborers etc. v. Conquer Cartage Co.,* 753 F.2d 1512, 1520–1521, n. 13 (9th Cir.1985) in support of their theory that notwithstanding the absence of a writing meeting the requirements of § 302, an employer might "adopt" the terms of a predecessor's Collective Bargaining Agreement. While the quoted section does set out a cogent analysis regarding the adoption by conduct theory, the section also makes clear that an adoption theory would be rejected where " 'adoption' would compel an illegal act…. Cf. *Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106, 1109 (9th Cir.1976) (holding that doctrine of

estoppel may not be invoked to compel an act that would not be in compliance with § 302(c)(5)(B)." *Id.* Therefore, in cases like the instant controversy where there is no underlying agreement, adoption/assumption would run afoul of the writing requirement of section 302.

**2.** The scope of the bargaining unit is described in Section 2 of the 1978–81 Agreement as:

The employer recognizes the Union as the sole and exclusive bargaining agent for all employees of the Employer except the following classifications whch are excluded from this Agreement: Field Clerical Employees, Office Clerical Employees, Confidential Employees, …, and Supervisors as defined in the [NLRA], as amended, and all other office employees of the Employer.

Tanaka and Uyehara are supervisors is a factual matter precluding summary judgment, this court finds as a matter of law that none of the attributes of an employee are present here. It is without question that Tanaka and Uyehara use independent judgment to direct other employees in the interest of T & U. See *McDonnell Douglas, supra* at 935. As owners, the term "supervisor" applies in fact to both Tanaka and Uyehara—to hold otherwise would render the definition of employees practically meaningless.[3]

*The 1981–84 Collective Bargaining Agreement*

Plaintiff's Count IV involves allegations that the WPA was a multiemployer bargaining association and that T & U joined the Association for the purpose of engaging in multiemployer bargaining with the Carpenters' Union. In support of their motion, defendants counter that T & U resigned from the WPA on January 14, 1982, and the Agreement is limited to "those persons, firms, or corporations that at the time of the execution of this agreement [February 25, 1983] are ... members of said Association...." Therefore, T & U maintains it cannot be bound by the Agreement since T & U was not a member of the WPA on the date of execution.

■ Regarding T & U's purported withdrawal from the WPA, the Trust funds argue such action violates Section 8(a)(5) of the LMRA, 29 U.S.C. § 158(a)(5).[4] In *Bonanno Linen Service v. NLRB*, 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982),

the Court canvassed the rules governing the withdrawal of an employer or a union from multiemployer bargaining. In situations like the instant case where negotiations have actually begun, withdrawal can only be effectuated on the basis of "mutual consent" or "unusual circumstances." *Id.*; see also *Retail Associates, Inc.,* 120 NLRB 388, 41 LRRM 1502.

Like the case of *Connell Typesetting Co.,* 212 NLRB 140, 87 LRRM 1001, 1003 (1974), the facts in this case are sufficiently unusual to warrant the conclusion that the general rule of *Bonanno* is not applicable to T & U. As the court has previously stated, Percy Ching acted as T & U's attorney-in-fact with regard to T & U's involvement in the WPA. Ching had represented to Tanaka and Uyehara that despite their signatures on the "Survey form" (or power of attorney), each company would have the option of signing their own agreement. (This is eventually what the Union attempted to do in March of 1983.) Once T & U discovered the power of attorney form authorized the WPA to negotiate and then *bind* T & U to any agreement entered into with the union, T & U quickly withdrew, thereby abrogating any action taken by Mr. Ching.

■ While plaintiff complains neither the union nor the trust funds were ever notified of T & U's withdrawal from the WPA, that was not T & U's responsibility. If such a duty belonged to anyone, it rested with the WPA. And once T & U pulled out

---

**3.** In addition, plaintiff's successor argument is weakened by the language in *N.L.R.B. v. Jeffries Lithograph Co.,* 752 F.2d 459 (9th Cir.1985). In determining whether an employer is a successor employer, "the touchstone remains whether there was an 'essential change in the business that would have affected employee attitudes toward representation.' [citations omitted.]" *Id.* at 464. What could possibly affect employee attitudes toward representation more than becoming owners?

**4.** The court finds T & U's primary jurisdiction argument without merit. Plaintiffs raised issues involving Section 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158, in response to contentions made by defendant. Defendant then cited, *inter alia, San Diego Build-*

*ing Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), for the proposition that plaintiff's § 8 response is one generally within the exclusive purview of the NLRB. However, "it does not follow that *all* considerations touching upon rights or obligations emanating from sections 7 or 8 are outside the competence of the courts. See e.g. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–86 [102 S.Ct. 851, 859–861, 70 L.Ed.2d 833]." *George Day Constr. v. United Broth. of Carpenters,* 722 F.2d 1471, 1481 (9th Cir.1984). In cases like the instant one where section 8 issues arise as collateral questions, the doctrine of primary jurisdiction will not deprive the district court of jurisdiction.

of multiemployer bargaining, no one had the power to include them in the 1981–84 Agreement. Therefore, given the January 1982 withdrawal, as well as the unusual circumstances of the case, T & U has no obligation vis-a-vis the trust funds under the 1981–84 Collective Bargaining Agreement.

### Statute of Limitations

Although the court does not reach this issue, this case illustrates the importance of a trust fiduciary pursuing claims in a timely fashion. When asked the total amount sought at the hearing on this motion, counsel for the trust funds put the sum at close to $70,000. This figure stood in sharp contrast to the approximately $7,000 sum expected by plaintiff. In cases involving delinquent contributions under ERISA, delays in filing suit cannot be countenanced.

■ Since 29 U.S.C. § 1132 (ERISA) does not contain a statute of limitations, courts must look to the most closely analogous state statute of limitations. See *Johnson v. Railway Express*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). H.R.S. § 657–11 provides:

> Whenever any federal statute provides for the imposition of a civil penalty or liquidated damages or imposes a new liability or enlarges any existing liability and the statute does not specify the period within which suit to recover the penalty, liquidated damages, or any sum arising out of any brought in state court, shall be commenced within one year from that date the cause of action arises or be thereafter barred.

In *Lai v. City and County of Honolulu*, 749 F.2d 588 (9th Cir.1984), the court considered the applicability of H.R.S. § 657–11 to 42 U.S.C. § 1983 civil rights actions. While the reasoning of the court in *not* adopting § 657–11 was subsequently mooted by the Supreme Court's recent decision in *Wilson v. Garcia*, —— U.S. ——, 105

S.Ct. 1938, 85 L.Ed.2d 254 (1985) (all § 1983 actions to be treated as personal injury actions for statute of limitations purposes), the Ninth Circuit's analysis of the legislative history of § 657–11 remains pertinent.

The court noted that the main purpose of § 657–11 "was merely to limit the time within which an employee could file suit under the Fair Labor Standards Act." *Lai*, 749 F.2d at 590. The court based their statement on remarks made by the Attorney General to Hawaii's Territorial Governor, and concluded that the narrow scope of the statute at the time of its adoption rendered it applicable only to federal statutes enacted after the adoption of § 657–11 in 1945.

Section 1132 was enacted in 1974, yet the applicability of the one-year period of limitations is hardly clear cut. Since the choice of the appropriate statute depends upon the proper characterization of the cause of action, *Price v. Southern Transportation Co.*, 586 F.2d 750 (9th Cir.1978), plaintiffs urge an analogy between their ERISA claims and a common law breach of contract action. In *Jenkins v. Local 705 Intern'l Broth. of Teamsters*, 713 F.2d 247, 252 (7th Cir.1983), the court found that "plaintiffs' claims for denial of benefits are creatures of contract law not labor law." Furthermore, other courts have noted that short statutes of limitation frustrate the federal policy embodied in § 1132 of ERISA: to protect the interests of participants in employee benefit plans. See e.g., *Haynes v. O'Connell*, 599 F.Supp. 59, 61 (E.D.Tenn.1984) and cases cited therein.

In *Hafer v. Air Line Pilots Ass'n, Inter.*, 525 F.Supp. 874 (Haw.1981), Judge Heen considered the applicability of § 657–11 to the Railway Labor Act (45 U.S.C. § 151 et seq.). The court held a one-year period was applicable since the Railway Labor Act "imposes a new liability" within the meaning of § 657–11. *Id.* at 877. In reaching that decision, Judge Heen noted that "the union's duty of fair representation is a federal obligation judicially fashioned from national labor statutes." *Id.*, citing *Price*

*v. Southern Pacific Transportation Co.,* 586 F.2d 750 (9th Cir.1978).

■ This court finds Judge Heen's reasoning more persuasive than plaintiff's argument that a one-year limitation would "unfairly discriminate against the national policy of ERISA." Section 1132 does impose "new liability," and a period of one year in which to bring suit would provide trust funds with sufficient time to protect their interests. Therefore, were the court to rule on the statute of limitations applicable to ERISA suits, the court would apply the one year period found in H.R.S. § 657–11.

Based on the above, IT IS HEREBY ORDERED that defendant T & U's Motion for Summary Judgment be, and the same is, GRANTED.