857 F.2d 1474
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ernest EVANS, Plaintiff-Appellant,
v.
The CELOTEX CORPORATION, Cement, Lime, Gypsum & Allied
Workers, et al., Defendants-Appellees.
 Nos. 87-5706, 87-5932.
 United States Court of Appeals, Sixth Circuit.
 Sept. 2, 1988.
 
 Before MERRITT, KRUPANSKY and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Ernest Evans (Evans) appeals the district court order (designated No. 84-2995-MB by the district court) denying his Fed.R.Civ.P. 59(e) motion to alter and amend judgment in a Sec. 301 hybrid suit against defendants-appellees Celotex Corporation (Company) and Cement, Lime, Gypsum & Allied Workers, et al. (Union). We affirm the district court order denying the 59(e) motion respecting the Company, but we remand the case as to the Union back to the district court, because we remain uncertain whether any final judgment has been entered by the district court regarding the Union.
 
 
 2
 * On November 30, 1984, Evans filed a complaint in district court against the Company charging that the Company had wrongfully discharged him in violation of the collective bargaining agreement. Evans complained that his discharge was in retaliation for his testifying at an unemployment hearing on behalf of a former employee, even though he was subpoenaed to testify. On October 16, 1985, Evans filed a Title VII complaint against the Union, charging that the Union's failure to take his case to arbitration was motivated by racial bias, and was arbitrary and discriminatory. On October 14, 1986, Evans moved to amend the complaint against the Company pursuant to Fed.R.Civ.P. 15(a) so that the two complaints could be consolidated. The district court consolidated the two actions.
 
 
 3
 On June 10, 1987, summary judgment was granted in favor of the Company by Judge McRae. Although the court had previously consolidated the two actions, Judge Horton issued a separate order granting summary judgment in favor of the Union on June 11, 1987. (App. 386)
 
 
 4
 Evans then filed in Judge McRae's court a Rule 59(e) motion on June 11, 1987, respecting both the summary judgment order against the Company (issued By Judge McRae) and the summary judgment order against the Union (issued by Judge Horton). On August 7, 1987, Judge McRae denied Evans's 59(e) motion respecting the Company. The caption in this order (designated as No. 84-2995-MB) names only the Company, and has only the case number assigned to the case against the Company.
 
 
 5
 We are unable to find in the record any evidence of a district court order denying the 59(e) motion as to the Union. Because we cannot be certain as to whether the district court ever ruled on a 59(e) motion respecting the Union, we remand this portion of the case back to the district court for further clarification.
 
 
 6
 Problems relating to the notices of appeal further complicate our appellate jurisdiction over the case against the Union. Evans's first notice of appeal, naming both the Union and the Company as defendants, was rendered ineffectual because it was filed during the pendency of his 59(e) motion before Judge McRae. Fed.R.App.P. 4(a)(4). His second notice of appeal was timely and properly filed after Judge McRae's 59(e) ruling, but named only the Company as a party defendant.
 
 
 7
 We now turn to the merits of the case respecting the Company.
 
 II
 
 8
 Evans was employed as a filler unloader by the Company from October 17, 1983 through June 18, 1984, when he was discharged. Evans was discharged for leaving work in violation of a supervisor's order. On June 15, 1984, before the shift ended, leadman Collins informed Evans that he needed him to work overtime. Evans told Collins the he was unable to work the requested overtime. Collins then told supervisor Dandridge that Evans had refused to work overtime. Dandridge sought Evans out, and upon finding him, told him that he was being ordered to remain at work. Evans refused. Dandridge then indicated to Evans that if he left the job, it would be as if he had quit. Evans responded that he just did not care, and then left the job.
 
 
 9
 The record shows that Dandridge sought the assistance of Union Steward Davis in persuading Evans to obey the instructions. Davis approached Evans in the locker room, and told Evans that he would be fired if he refused to work the mandatory overtime. Evans nevertheless refused.
 
 
 10
 Evans reported to work the following day, but was suspended pending a hearing on his refusal to work. Evans became angry and abusive. Union President King calmed Evans down. Evans was instructed to return to the Company on June 18 for a meeting with personnel officials.
 
 
 11
 On June 18 a meeting was held by Employee Relations Supervisor Richardson and Production Supervisor Marascuilo to investigate the alleged misconduct of Evans. Union President King and Evans attended the hearing. Evans responded to the charges. Subsequently, a decision was made to discharge Evans for his refusal to obey the supervisor's instructions.
 
 
 12
 On June 20, 1984, the Union filed a grievance, which was processed in accordance with the collective bargaining contract. Pursuant to the terms of the collective bargaining contract, the grievance was first presented to Evans's foreman Dandridge. Dandridge denied the grievance. The grievance was then appealed to Production Supervisor Marascuilo who denied it. The Union then appealed the grievance to Plant Manager Wiseman, the third step of the process, who also denied it. Neither the Union nor Evans ever filed a notice of intent to submit the grievance to arbitration pursuant to Article XVIII of the collective bargaining contract.
 
 
 13
 Union Steward Davis and Union President King testified in affidavits that the Union declined to submit the grievance to arbitration because the arbitration would have been unsuccessful. Their belief was grounded in "a well recognized past practice pursuant to which the Company could require an employee to hold over (or to work overtime) for up to two hours...." Based on clear insubordinate conduct, and this past practice, the Union was convinced that the grievance would be unsuccessful. The Union accordingly decided not to process the grievance for arbitration.
 
 III
 
 14
 Evans argues that the district court erred in granting summary judgment to the Company because a genuine issue of material fact existed as to whether the Union breached its duty of fair representation owed to Evans. Evans had amended his complaint to include a Title VII action against the Union, in which he alleged that the Union failed to take his case to arbitration out of racial bias.
 
 
 15
 Sec. 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185, permits an individual to sue his employer and union for violation of a collective bargaining agreement. When the suit is based on the failure or refusal of a union to prosecute the employee's grievance under the collective bargaining agreement, the employee must first show that he has exhausted the mandatory contractual remedies. Republic Steel Corporation v. Maddox, 379 U.S. 650 (1965). If an employee can demonstrate that a union has breached its duty of fair representation, or that a resort to the grievance procedure would have been futile, exhaustion may be excused. Vaca v. Sipes, 386 U.S. 171 (1967). If a plaintiff can establish exhaustion, or a breach of the duty of fair representation, the plaintiff must then demonstrate that the employer's conduct breached the collective bargaining agreement. Failure to prove the Union's breach of the duty of fair representation defeats the plaintiff's action against the Company.
 
 
 16
 The district court held that Evans had failed to prove any breach by the Union, and accordingly granted summary judgment to the Company. The district court, in our view, was correct. Evans fails to point to any facts in any affidavit or deposition which would suggest the existence of any genuine issue of material fact concerning the Union's alleged breach of the duty of fair representation. There is no record evidence supporting the claim that the Union's failure to take the case to arbitration was motivated by impermissible racial factors. His brief filed in this court is conclusory and unhelpful. Evans argues that the court erred by accepting the affidavits and depositions submitted by the Company and Union because they are "self-serving." That the affidavits and depositions contain declarations supporting the Company and the Union does not mean that they are not to be considered by the district court in ruling on a summary judgment motion. Evans simply failed to present the necessary factual basis which would stave off summary judgment.
 
 
 17
 To establish a breach of the duty of fair representation, an employee must demonstrate that the "union's conduct toward a member of the collective bargaining unit was arbitrary, discriminatory, or in bad faith." Vaca, 368 U.S. at 190; Williams v. Kroger Co., 369 F.2d 85 (6th Cir.1966). As the appellee Company points out, mere refusal to process a grievance does not constitute a breach; the employee must show that the union's refusal was predicated upon "ill-will, prejudice, or deliberate bad faith." Price v. Southern Pacific Transportation Co., 586 F.2d 750, 754 (9th Cir.1978). Evans has failed to proffer any evidence tending to show that the Union's decision not to take the grievance to arbitration was motivated by racial or any other form of prejudice as required by Sec. 301.
 
 
 18
 Therefore the district court order granting summary judgment to the Company is AFFIRMED.