Grady S. PATTERSON, Plaintiff-
Appellant,

v.

TULSA LOCAL NO. 513, MOTION PIC-
TURE OPERATORS OF the UNITED
STATES AND CANADA, Defendant-
Appellee.

No. 426–70.

United States Court of Appeals,
Tenth Circuit.

Aug. 6, 1971.

Rehearing Denied Sept. 7, 1971.

Edwin W. Ash, Tulsa, Okl., for plaintiff-appellant.

Charles H. Froeb, Tulsa, Okl., for defendant-appellee.

Before HILL and JONES,* Circuit Judges, and WESLEY E. BROWN, District Judge.

WESLEY E. BROWN, District Judge.

Patterson invoked the provisions of 29 U.S.C. §§ 185, 411, 412 in an effort to recover damages from his Union, Tulsa Local No. 513, the appellee. Judgment was entered in favor of the Union, and Patterson has appealed the trial court's adverse rulings, alleging numerous errors.

The issues tried below centered upon Patterson's "breach of contract" claim based on the allegation that the Union had wrongfully refused to allow him to "bump" a co-member from a job, thereby failing to enforce union seniority provisions found in Article 16 of the constitution and by-laws of Local 513, as recognized in applicable collective bargaining agreements existing in his area of employment. Patterson also alleged a violation of rights protected by 29 U.S.C. § 411 in that he was prohibited from speaking at a Union meeting on May 3, 1966, and he further contended that the Union wrongfully failed to represent him when he was discharged by an employer in July, 1969.

The trial court found that it had jurisdiction of these issues pursuant to 29 U.S.C.A. § 412, and 29 U.S.C.A. § 185, and ruled that the union seniority provisions which were a part of the Article 16 of the constitution and by-laws were unlawful, discriminatory and non-enforceable, being in violation of 29 U.S.C.A. § 158(b) (1) (A) and (b) (2); that Patterson was not denied the right to speak freely at the union meeting of May 3, 1966, and that the Union had acted properly in grievance proceedings following Patterson's discharge from his job at the Majestic Theatre during the summer of 1969.

The facts giving rise to this action are not in dispute. Patterson is a motion picture machine operator in Tulsa, Oklahoma, he has been a member of Local 513 since 1918, and he is the most senior member of that organization. At all times in question, Local 513 had collective bargaining agreements in effect with all of the motion picture theatres in the Tulsa area, and by virtue of such contracts, it furnished a list of names of qualified operators to the theatre owners whenever the need arose. The theatre owner then picked one operator from the list, and that operator became an employee of the theatre, subject to and in accordance with the contract negotiated between the theatre and Local 513.

In March, 1966, Local 513 had a contract in effect with the Majestic Theatre, by which the theatre "recognized" union seniority rights found in Article 16 of the constitution and by-laws of Local 513. Pertinent portions of that Article are as follows:

Section 1: Any person or persons admitted to membership in Local Union No. 513 on or after the date this law becomes effective will be subject to removal from any job by the business representative of this Local when such jobs are desired by any person or persons who was a member in good standing in this Local Union No. 513 on or prior to October 7, 1940. Any person gaining membership in Local Union No. 513 * * * after October 7, 1940, shall assume his place for purpose of seniority rights according to the date of his registration with the general office on the roster of Local Union No. 513.

\* \* \* \* \* \*

Section 2: The secretary of this Local shall furnish all applicants for regular membership in this Local with all laws pertaining thereto, at

the time application is filed with him. Any person or persons admitted to membership in this Local Union No. 513 on or after the 7th day of October, 1940, shall be subject to removal from any position as operator or apprentice by the Business Representative of this Local when such positions are desired by any member who was in good standing prior to his admittance.

*  *  *  *  *  *

Section 4: We, I, and each of us agree and accept the membership seniority rule and law, as announced and stated in Article 16, Sections 1, 2, 3, and 4 of the said Article, and further agree that no change can or will be accepted or permitted, ever, until so voted by a two-thirds majority of the membership total, prior to October 7, 1940, and then only after being read at two (2) regular meetings and each member having been notified in writing by the Corresponding Secretary as to the date that same will be an order of business.

Failure to comply with the rule and law of Article 16 and the four (4) sections thereof, by an officer or member of this Local Union No. 513, shall be expulsion for failure to comply.

At this time, Patterson was unemployed, and he attempted to have a fellow union member, with less union seniority, removed as an operator at the Majestic Theatre. The fellow-member refused to be bumped from his job, and Local 513 took no action to enforce the provisions of Article 16 because it had been advised by the International Union and local labor attorneys that union seniority and the practice of "bumping" was unlawful under the National Labor Relations Act. The validity of the seniority provisions of Article 16 had been debated by Patterson and others in union meetings since 1959, a majority of the membership had voted not to continue the practice of bumping, although Article 16 remained in the constitution, with suitable footnotes to the effect that it was unenforceable. On May 3, 1966, at a regular meeting of Local 513, Patterson again attempted to argue the legality of Article 16, and he was ruled out of order by the President.

In June, 1969, Patterson was employed as a projectionist at the Majestic Theatre. A fellow worker was arrested by the police and confined in jail for his part in showing certain pictures at the theatre. Patterson decided that he did not want to operate any movie machines at Majestic until the matter could be settled. The manner of his leaving the job was disputed, Patterson contending that he obtained a valid leave of absence. The theatre owner eventually fired Patterson because of his refusal to return to work. Pursuant to the contract in effect between Majestic and Local 513, grievance procedures ensued, a meeting was had between Patterson, management, union representatives, and members of the Executive Board of the Union. It was determined that Patterson was justifiably given a two-week notice of dismissal for failure to report for work. All parties except Patterson agreed that additional proceedings were not warranted. Patterson took the matter up with the National Labor Relations Board, but eventually dropped the case.

In August, 1969, the Continental Theatre in Tulsa had an opening for an operator. According to the usual procedure, Continental notified Local 513 of the opening, and the Union supplied Continental with a list of union members who were interested in the job. Patterson's name was on this list, but he was not selected for the position. Continental's choice of a union member, other than Patterson, was based on the applicant's age, experience and ability to work compatibly with other operators. Patterson contended that under Article 16 he had greater seniority and should have been given the job.

Although no question of subject-matter jurisdiction of Patterson's claims has been raised in this appeal, the Court

is satisfied that complaints regarding Patterson's discharge by Majestic, and the alleged failure of the union to allow him to speak during meetings are claims of rights protected under 29 U.S.C.A. § 411,[1] and the union member's "Bill of Rights," and therefore within the jurisdiction of the court under 29 U.S.C.A. § 412.[2]

With respect to Patterson's claimed breach of contract rights, based upon Article 16 of the union constitution and by-laws, the court is likewise satisfied that insofar as such claim is based upon the union's breach of its duty of fair representation with regard to collective bargaining agreements existing between the union and the Tulsa theatres, Congress has affirmatively indicated that jurisdiction may be properly exercised under the provisions of 29 U.S.C.A. § 185.[3] See recent decision of the Supreme Court in Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Lockridge (June 14, 1971), 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473, discussion therein, and cases cited: Smith v. Evening News Association (1962), 371 U.S. 195, 83 S.Ct.

267, 9 L.Ed.2d 246; Humphrey v. Moore (1964), 375 U.S. 335, 84 S.Ct. 363, 11 L. Ed.2d 370; Vaca v. Sipes (1967), 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. For such claim to succeed, however, Patterson is required to prove "arbitrary or bad faith conduct on the part of the union." See Amalgamated Association v. Lockridge, *supra*, 91 S.Ct. at 1924.

The trial court found that the Article 16 provisions, purporting to protect "union seniority" and giving Patterson the right to "bump" other members from their jobs, was unlawful and discriminatory, in violation of Title 29 U.S.C. §§ 158(b) (1) (A) and (b) (2), which prohibit unfair labor practices on the part of employers and labor organizations.

Section 158(b) provides in pertinent part that:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in Section 157 of this title: *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with

---

1. Section 411, 29 U.S.C.A. provides in pertinent part:
"(a) (1) *Equal rights—*
Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections * * * to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
(a) (2) *Freedom of speech and assembly—*
Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, * * * upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization

to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations. * * * "

2. Section 412 provides in pertinent part: "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. * * * "

3. Section 185 provides in pertinent part: "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties * * * "

respect to the acquisition or retention of membership therein; * * *." [4]

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership * * *" [5]

■ The foregoing legislation was not designed to impose limitations upon the power of the labor organizations to regulate their internal affairs and local rules may be made and enforced through the process of levying fines or other disciplinary action, so long as such enforcement does not amount to a condition of employment, in violation of Section 158. The policy of the National Labor Relations Act is simply to insulate the employee's job from his organizational rights. See NLRB v. Allis-Chalmers Mfg. Co. (1967), 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123, rehearing denied 389 U.S. 892, 88 S.Ct. 13, 19 L.Ed.2d 202; Scofield v. NLRB (1969), 394 U.S. 423, 89 S.Ct. 1154, 22 L.Ed.2d 385; NLRB v. International Bro. of Boilermakers Etc. No. 338 (10th Cir. 1969), 409 F.2d 922; Kalish v. Hosier (D.C.Colo.1965), 256 F. Supp. 853, affirmed (10th Cir. 1966), 364 F.2d 829, cert. denied 386 U.S. 944, 87 S.Ct. 972, 17 L.Ed.2d 874.

■ Patterson contends that his right to enforcement of Article 16 relates solely to an internal union matter, unaffected by federal legislation, but enforcement of his union seniority would be clearly violative of § 158, which is designed to insulate and protect his fellow-members' employment rights from whatever obligations they may have under their internal union by-laws. In view of the provisions of § 158, there was no lawful manner in which Local 513 could force an employer to terminate one of Patterson's fellow union members simply because Patterson wished to assert his union seniority claims.[6] Cf. NLRB v. International Bro. of Boilermakers, *supra*, 409 F.2d 922. Under such circumstance, the trial court's finding that Article 16 is unlawful and violative of 29 U.S.C. § 158(b) (1) (A), (b) (2) is correct. See NLRB v. International Brotherhood etc. (8th Cir. 1955), 225 F.2d 343.

4. The employee rights guaranteed in Section 157 are as follows:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively * * * and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment * * *"

5. Section 158(a) (3), mentioned in the above quoted § 158(b) (2) prohibits an employer from discriminating in regard to hire or tenure of employment for the purpose of encouraging or discouraging membership in any labor organization, and specifically provides that no employer shall discriminate against an employee for non-membership in a union if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure to tender periodic dues uniformly required as a condition of membership.

6. It should be noted that in the 1965–1966 Majestic contract, Local 513 waived the requirement that employees working within the jurisdiction of Local 513 become and remain members of the local as a condition of employment. (Record, p. 46, ¶9). This contract further provided that:
"Nothing contained herein shall, however, require the Employer to discharge or in any way to discriminate against any employee who has been denied membership or has had his membership in the Union terminated for any reason other than the failure of such employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership."

There is ample evidence to support the trial court's finding that Patterson was not denied the right of free speech protected by 29 U.S.C.A. § 411, and that he was properly ruled out of order at the meeting of May 3, 1966, pursuant to the Local's rules for conducting its meetings in an orderly fashion. The evidence established that the enforceability of Article 16 had been freely debated within the union since 1959, a majority of the membership had voted not to attempt to enforce it, and Patterson had previously been allowed to express his erroneous view that the seniority provision was lawful.

There was also substantial evidence to support the trial court's finding that Local 513 had acted properly in its representation of Patterson at the time he was discharged by the Majestic Theatre in 1969. Patterson's evidence fell far short of establishing that the union failed to act in good faith, or that its conduct in this regard was arbitrary, discriminatory or in bad faith. See Vaca v. Sipes, *supra*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.

The judgment of the trial court denying relief to Patterson is affirmed.