Donald SINGER, Plaintiff-Appellant,

v.

The FLYING TIGER LINE INC., and Air Line Pilots Association, International, Defendants-Appellees.

No. 79–3728.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 1981.

Decided Aug. 13, 1981.

---

Peter J. Marx, Los Angeles, Cal., for plaintiff-appellant.

Gary Green, Washington, D.C., A. James Roberts, Tuttle & Taylor, Los Angeles, Cal., for defendants-appellees.

Before TANG and BOOCHEVER, Circuit Judges, and PRICE,* District Judge.

BOOCHEVER, Circuit Judge:

This suit involves a claim by an airline flight engineer that he should have been granted a second opportunity to become a copilot. He claims that the union breached its duty of fair representation and the employer breached the terms of the collective bargaining agreement. The union and employer both claim Singer's suit is barred by the applicable statute of limitations. We find that some of Singer's claims can be characterized as continuous violations and they are thus not time-barred. As to the surviving claims, however, we conclude that Singer has failed to allege facts which would preclude the district judge from granting summary judgment in favor of the defendants. We therefore affirm.

* The Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation.

1. Airline employees are exempted from the coverage of the National Labor Relations Act by 29 U.S.C. § 152(3), and are instead covered by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Under 45 U.S.C. § 184 an air carrier and

**I. Facts**

Donald Singer was first employed as a flight engineer or second officer by the Flying Tiger Line, Inc. (FTL) in 1956. At that time, flight engineers were represented by Teamsters Local 986, while first officers (copilots) and captains (pilots) were represented by the Air Line Pilots Association, International (ALPA).

In 1966, while Singer was still a flight engineer, Local 986, FTL and ALPA signed an agreement which provided that from that point on, ALPA would serve as the exclusive collective bargaining agent for the flight engineers in place of Local 986. The "Tripartite Agreement," as the parties refer to it, granted certain grandfather rights to the 84 flight engineers who were then represented by Local 986.

In 1970, Singer successfully bid for a position as a copilot, but in 1972 he failed to pass a proficiency test and was downgraded to flight engineer. On April 6, 1972, FTL notified Singer that he was "permanently" reduced in status to flight engineer. This letter led to a series of actions that ultimately, more than six years later, led to this lawsuit.

On April 17, 1972, Singer filed a grievance with FTL, which was denied. ALPA submitted the grievance to arbitration before the ALPA–FTL System Board of Adjustment,[1] and ALPA counsel represented Singer at the grievance hearing. The principal issues raised were that: (1) Singer had received inadequate training for the proficiency test; (2) Singer took the test under adverse circumstances and was unaware of the fact that he would not have another chance to qualify; and (3) paragraph 22 D 3 of the collective bargaining agreement be-

its employees are to establish a System Board of Adjustment for arbitration of employee grievances arising under a collective bargaining agreement. The ALPA–FTL System Board consisted of two members each from ALPA and FTL and a neutral fifth person in case of a deadlock.

tween ALPA and FTL (the Pilot Agreement) granted him a second chance to qualify as a copilot. In October 1972, the four members of the System Board voted unanimously to deny the grievance.

In May and July of 1974, Singer again bid for a copilot position and FTL again denied his request. Singer filed another grievance, FTL denied it, and ALPA again represented him at a System Board hearing. Singer raised a somewhat different issue in the 1974 proceeding. As just discussed, in 1972, Singer argued that paragraph 22 D 3 of the Pilot Agreement between ALPA and FTL provided for a second opportunity to qualify for a copilot position. The Tripartite Agreement provides that a copilot who fails a proficiency test shall be "returned to a flight engineer vacancy or assignment." Although it is not clear from the record, Singer apparently believed that the 1972 Board had relied on this language to conclude that the general language of the Pilot Agreement did not apply to the 84 flight engineers covered by the Tripartite Agreement. Singer contended in the 1974 grievance that the language in the Tripartite Agreement did not imply a permanent reduction in status. According to Singer's theory, the Tripartite Agreement was not intended to limit any rights, and therefore the general language of the Pilot Agreement providing two chances to qualify for a higher position was meant to be applied to everyone.

Prior to rendering a System Board decision on the 1974 grievance, FTL first requested an interpretation of the Tripartite Agreement by a "Joint Grievance Board." This board, established by paragraph 15 of the Tripartite Agreement, consists of three members and is designed to resolve disputes concerning the meaning of language in the agreement. On January 30, 1975 the Joint Grievance Board unanimously concluded that the Tripartite Agreement did not allow a flight engineer a second opportunity to qualify as a copilot. The basis of the decision is that flight engineers covered by the

Tripartite Agreement always retained their former seniority, whereas those not covered by the agreement faced dismissal. The Joint Grievance Board apparently viewed the grandfather rights granted by the Tripartite Agreement as the quid pro quo for giving up the opportunity for a second chance to qualify for a higher position contained in the Pilot Agreement.

Following this decision, the System Board met, concluded that the Joint Grievance Board's interpretation was correct, and unanimously denied Singer's grievance.

Finally, in 1976, Singer made another bid for copilot which the company denied. FTL denied his grievance in 1977. This time ALPA arranged for Singer's case to be heard before a System Board, but refused to represent him. Singer retained private counsel. The principal issue in the hearing related to another System Board decision. In 1976, Captain Calton, an employee covered by the Tripartite Agreement, failed a captain proficiency test. At Calton's System Board hearing the Board gave Calton a second chance to qualify because it found that Calton was under the good faith belief that he had another chance to qualify, and because his proficiency check was performed under adverse circumstances.

In his 1977 grievance, Singer relitigated the issues raised in his prior grievances, and in addition contended that his case was indistinguishable from the *Calton* case. In a 1977 opinion, the System Board denied Singer's grievance, concluding that the *Calton* decision did not alter prior board precedent, and that all of Singer's other contentions had been decided by the Board that heard his 1972 and 1974 grievances.

On November 17, 1978, Singer filed a complaint in District Court against FTL and ALPA. This appeal is from an order granting the two defendants' motion for summary judgment.

## II. Statute of Limitations

The Railway Labor Act does not contain a statute of limitations and it is

therefore necessary to look to relevant state law. *See Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). The parties agree that California law supplies the appropriate limitations period. In *Price v. Southern Pacific Transportation Co.*, 586 F.2d 750, 752–53 (9th Cir. 1978), this court characterized a suit against a union for a breach of its duty of fair representation as an action based upon a national labor statute and concluded that the three year limitations period of Cal.Civ. Proc.Code § 338(1) applied. The trial judge in this case concluded that an action against an employer based upon an alleged breach of a collective bargaining agreement could best be characterized as a suit upon a written agreement and applied the four year statute contained in Cal.Civ.Proc.Code § 337 which is applicable to such suits. Other jurisdictions have accepted this approach, *see Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 446 (8th Cir. 1975), and neither FTL or the union urged the court to apply a different limitations period.

Before oral argument in this court, however, the Supreme Court decided in *United Parcel Service, Inc. v. Mitchell*, —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), that a suit against a union and employer following an arbitration award could best be characterized as a suit to vacate the arbitration award. Many states have short statutes of limitations applicable to such actions, —— U.S. at —— n.5, 101 S.Ct. 1564 n.5, and California's 100 day limitations period contained in Cal.Civ.Proc.Code § 1288 is no exception.

In the future, as *Mitchell* requires, when the action is commenced after an unfavorable arbitral decision, we shall treat suits against a union for a breach of the duty of fair representation and against an employer for a breach of a collective bargaining agreement under this type of limitations statute. In this case, however, we decline to apply the rule.

Neither FTL nor ALPA ever asserted in district court that the shorter statute contained in § 1288 was applicable to this case, and ordinarily we will not hear claims that are advanced for the first time on appeal. —— U.S. at —— n.2, 101 S.Ct. at 1562–63 n.2. Moreover, we believe that it would be inequitable to apply such a rule retroactively. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 105–108, 92 S.Ct. 349, 354–56, 30 L.Ed.2d 296 (1971), the Supreme Court, in declining to apply a shorter statute of limitations retroactively to extinguish a claim, identified a number of factors that it considered important. In this case, as in *Huson*, we believe that a critical factor is that the rule of the *Mitchell* case is not one which might have been anticipated. Although the *Price* decision is not precisely on point,[2] we believe Singer might reasonably have relied upon it to conclude that he had three years to file a claim. In the district court, FTL and ALPA both vigorously argued that Singer's claims were barred by a three year statute of limitations, rather than the shorter period. Their apparent belief that the shorter statute was inapplicable is some further indication that Singer's reliance was reasonable. We conclude that Singer cannot be accused of a lack of diligence in the filing of his claim in district court, at least insofar as the 1977 grievance is concerned. We will therefore apply the statutes of limitations used by the district judge, namely a three year statute for claims against the union and a four year statute for claims against the company.

ALPA and FTL contend that all Singer's claims are barred even under these longer statutes because he first raised them in the 1972 System Board hearing. In their view, FTL's denial of Singer's subsequent bids for copilot in 1974 and 1976 were ineffective to revive his cause of action. If true, then the

---

2. In *Price* the union stopped short of filing a grievance, and therefore the claim was not an appeal from an arbitration award.

action would be barred because Singer filed his claim in district court more than six years after the 1972 System Board decision.

■ A somewhat similar question was decided by the Supreme Court in *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), a Title VII case. In *Evans*, the Court rejected the argument that a plaintiff could challenge a discriminatory policy simply because its effects were carried forward into the limitations period by a seniority system. The court emphasized that "the critical question is whether any present *violation* exists." 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis in original).

This case is unlike *Evans*, however, for if the Pilot Agreement can be construed as affording Singer a second chance to qualify, then each time FTL denied his bids for first officer they were guilty of a present violation. An example of such a case is *Jurinko v. Edwin L. Wiegand Co.*, 477 F.2d 1038, 1042 (3d Cir.), *vacated and remanded on other grounds*, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), where the court concluded that an employer who maintained a no-marriage policy in hiring was guilty of a new violation each time he refused to hire the plaintiff.[3] Furthermore, the effect, if any, of the *Calton* decision is also open for review as that issue was first presented to the System Board in 1977.

On the other hand, in his 1972 hearing, Singer complained that FTL breached the collective bargaining agreement by failing to train him adequately and by making him take his 1972 check ride under adverse circumstances. These violations occurred outside of the limitations period and they can not be characterized as continuous violations. The district judge properly concluded that these claims were time-barred.

### III. Claims Against the Union

■ If there has been a breach of the duty of fair representation, the System Board decisions cannot be given the deference to which they ordinarily would be entitled. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). The union's duty is breached when its conduct is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). We have noted on several occasions that a plaintiff must prove something more than negligence. *Stephens v. Postmaster General*, 623 F.2d 594, 596 (9th Cir. 1980); *Robesky v. Qantas Airways Ltd.*, 573 F.2d 1082, 1089–90 (9th Cir. 1978).

■ In connection with the 1975 System Board decision, Singer's principal complaint is that the union did not inform him of the grievance hearing and he did not attend. Resolving any factual controversy in Singer's favor,[4] this evidence, by itself, is not sufficient to show a breach of the duty of fair representation. The only issue raised was one of the proper construction of the Tripartite Agreement. No factual question was presented. Singer has not alleged that his absence actually prejudiced him. This case might be contrasted to the clear showing of prejudice in *Robesky*, 573 F.2d at 1090–91, where the union's failure to tell an employee of certain facts led the employee to turn down an offer of reinstatement. In a case like the present one, the Sixth Circuit concluded in *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976), that the failure to notify an employee of a meeting between the union and company concerning a grievance was perhaps negligent, but not enough to constitute a breach of the union's duty of fair representation.

---

**3.** *Jurinko* was decided prior to *Evans*, but the Third Circuit has emphasized the principle's continued validity in *Masco v. United Airlines*, 574 F.2d 1127, 1130 (3d Cir. 1978). *See also Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 584–586 (D.Minn.1978); B. Schlei and P. Gross-man, Employment Discrimination Law 227–36 (Supp.1979).

**4.** The union contends no hearing was ever held as the issue was resolved on the written record. Singer claims there was a hearing.

In connection with the 1977 grievance, Singer raises two arguments. First, he contends that ALPA breached its duty by not representing him at the System Board hearing. Employees have no absolute right to have their cases taken to arbitration, however. *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. A union must only take those claims to arbitration which the union believes honestly and in good faith have merit. *Id.* at 192, 87 S.Ct. at 918. *Fountain v. Safeway Stores, Inc.*, 555 F.2d 753, 756–757 (9th Cir. 1977).

The only issue raised in the 1977 grievance which had not been completely explored in the 1972 and 1974 grievances was the effect, if any, of the Board's *Calton* decision. ALPA apparently concluded that the *Calton* case was distinguishable. Singer has not shown that the union acted arbitrarily or in bad faith in its belief that the *Calton* decision would not help his claim. On the present record, we conclude the district judge properly held that there was no factual dispute, which, if resolved in Singer's favor, could justify a finding that the union breached its duty of fair representation by forcing Singer to retain private counsel.

Singer's second complaint with regard to the 1977 System Board hearing is more serious. Although Singer's attorney represented him at the System Board hearing, an ALPA attorney also attended the hearing and asked Singer several questions. Singer contends that this questioning manifests the union's hostility towards him and damaged his case before the System Board. In his reply to the defendant's motion for summary judgment, Singer did not include the complete transcript of the System Board hearing, so it is not possible to fully evaluate this claim. From the evidence Singer has submitted in the record, we conclude that although it was improper for the union to inject its interests into the hearing, it did not taint the arbitration hearing. First, it is clear that Singer was effectively represented by his own counsel and the union's participation was minimal. Second, the union was careful to confine its remarks. Finally, the factual circumstances of this case, where the grievant had obtained three arbitral decisions based upon essentially the same interpretation of a collective bargaining agreement and the union had already represented the grievant twice, is indeed unique.[5] We believe the union's prior representation of Singer dispels the claim that the union was hostile to his case. The evidence falls short of the claim in *Hill v. Aro Corp.*, 275 F.Supp. 482, 491 (N.D.Ohio 1967), for example, where the court denied a motion for summary judgment in favor of the union. The union allegedly forced a union member to obtain private counsel and then withheld evidence helpful to the grievant and failed to cooperate with the member's attorney. We conclude that none of the arbitral decisions were tainted by a breach of the duty of fair representation.

## IV. Claims Against the Employer

The claims against FTL are subject to the narrow scope of judicial review of arbitral decisions imposed by the Railway Labor Act. The Act provides in 45 U.S.C. § 153(p) and (q) that arbitral decisions may only be set aside for exceeding the arbitration board's jurisdiction under the statute or collective bargaining agreement, or for fraud or corruption of a board member. Section 153 is applicable by its terms only to decisions of the National Railroad Adjustment Board, but the same standard is applicable to System Board decisions under sec-

---

5. The union's attorney stated the following at the System Board hearing.

We take no position with respect to the merits of Mr. Singer's grievance. We do want to ensure he has full due process rights to a fair hearing today before the Board, but we also want to protect our position with respect to our past participation in Mr. Singer's prior grievances, and I want to ensure that there is no claim here today that somehow ALPA failed in its duty to adequately . . . and fairly represent Mr. Singer in the past.

tion 184. *Hunt v. Northwest Airlines*, 600 F.2d 176, 178 (8th Cir. 1979). This court has also noted the narrow scope of review in *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404, 405 (9th Cir. 1974).

With regard to the interpretation of the Tripartite Agreement and the Pilot Agreement as foreclosing to the original 84 flight engineers a second opportunity to qualify, the Supreme Court has noted that:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

 Singer's argument, that the Tripartite Agreement does not, in specific language, prohibit him from seeking a second opportunity to qualify as a first officer, does not support reversal. The Board's decision interpreting the agreement as providing for such a restriction as an apparent tradeoff for grandfather rights is both a "rationally inferable" one and one beyond the scope of this court's review. *International Association of Machinists and Aerospace Workers, District Lodge # 19 v. Southern Pacific Transportation Co.*, 626 F.2d 715, 717 (9th Cir. 1980).

Courts are also foreclosed from examining the merits of a System Board decision so long as the subject matter is within the Board's jurisdiction. *Gunther v. San Diego & Arizona Eastern Railway Co.*, 382 U.S. 257, 264, 86 S.Ct. 368, 372, 15 L.Ed.2d 308 (1965). Nevertheless, the close parallel between the facts in Singer's case and the *Calton* decision raises the possibility of arbitrariness on the part of the System Board.

In 1966, the Congress considered various amendments to the Railway Labor Act. Among them was an amendment which would have expanded court review to include setting aside decisions which the court considered arbitrary and capricious. The standard was rejected. A Senate Labor and Public Welfare Committee report did note, though, that it believed that a federal court would still have the power to set aside an award "which was actually and indisputedly without foundation in reason or fact." 2 [1966] U.S.Code Cong. & Ad.News 2285, 2287. This circuit has relied on this standard in *International Association of Machinists*, 626 F.2d at 717.

Although the results in *Calton* and Singer's cases may appear inconsistent, we cannot conclude Singer's decision is "actually and indisputedly without foundation in reason or fact." The two System Boards that heard the testimony were in a position to evaluate the credibility of the witnesses and may well have concluded that Calton was a more believable witness than Singer. Moreover, arbitrator's decisions are not to be restrained in a "strait jacket of precedent" but need to be evaluated on a case by case basis. *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228, 234 (5th Cir. 1970).

We cannot conclude that the district court erred in failing to set aside the arbitral decisions denying Singer a second opportunity to qualify for a first officer position.

The decision is therefore AFFIRMED.