**Donald Levon WILLIAMS, Plaintiff,**

v.

**UNITED AIRLINES, IAM LOCAL 1781, and IAM Airline Machinists District 141, Defendants.**

**No. C–82–2452–WWS.**

United States District Court,
N.D. California.

Dec. 28, 1982.

Alan Yee, Siegel, Friedman & Dickstein, Oakland, Cal., for plaintiff.

Carmen Alvarez, John B. Marchant, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for United Airlines.

Joseph R. Colton, Norback, DuRard, Colton, Gangemi & Schuler, San Mateo, Cal., for IAM Dist. 141 and Local 1781.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

Plaintiff, a former employee of United Airlines, makes two claims in his amended complaint. He first charges that United wrongfully discharged him and that his bargaining representatives, Local 1781 and District 141, International Association of Machinists, breached their duty of fair representation. In his second cause of action he alleges that his termination and unfair representation by defendants was on account of his race and violated Title VII.

Plaintiff took his discrimination claim to the Equal Employment Opportunity Commission, which issued a right to sue letter in March 1982. To the extent the action asserts a Title VII claim, it was timely filed.

The unions have moved to dismiss the labor claims as untimely on the authority of *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). The Ninth Circuit had occasion to pass on the applicability of *Mitchell* to cases of this

---

type in *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349 (9th Cir.1981). It declined to apply *Mitchell* retroactively where the complaint had been filed three years before the Supreme Court's decision and the *Mitchell* defense was first raised on appeal. But the court also announced the rule to be followed henceforth:

> In the future, as *Mitchell* requires, when the action is commenced after an unfavorable arbitral decision, we shall treat suits against a union for a breach of the duty of fair representation and against an employer for a breach of a collective bargaining agreement under this type of limitations statute.

652 F.2d at 1353. The statute referred to was Cal.Code Civ.Proc. § 1288, which provides for a 100-day period within which to file an action to vacate an arbitration award.[1]

Inasmuch as this action was filed more than a year after the decision in *Mitchell* and nearly nine months after *Singer,* retroactivity is not an issue here. If *Mitchell* and *Singer* apply, this claim is time barred.

The only question is whether *Mitchell* and *Singer* apply when the grievance procedure has not been exhausted as it was in those cases. According to the amended complaint, plaintiff's grievance was taken through the first three steps of the procedure. At the fourth step, plaintiff alleges, the union declined to offer evidence. And on September 12, 1979, the union declined to take the grievance to the System Board of Adjustment, the final step.

In two recent decisions, the Ninth Circuit confronted the choice of the proper state statute of limitations in employee actions where the grievance procedure had not been invoked at all. In *Christianson v. Pioneer Sand & Gravel Co.,* 681 F.2d 577 (9th Cir.1982), the court held that the Washington three year statute for actions on oral contracts applied to an action against the *employer* for wrongful layoff. The court did not discuss retroactivity, but *Singer* would in any event have barred application of a short limitation period pursuant to *Mitchell* because the action had been filed in 1977. In *Washington v. Northland Marine Co., Inc.,* 681 F.2d 582 (9th Cir.1982), the court held that the three year tort statute applied to an action against the *union* for breach of the duty of fair representation in a dispute over failure to pay premium pay. Again, since the action had been filed in 1974, *Singer* precluded application of the short limitation period, but the court did not discuss the point.

Nowhere in these two decisions did the court refer to Washington's three month statute of limitations which applies to actions to vacate arbitration awards, Rev. Code Wash.Ann. § 7.04.180 (1961). Much less did it state that this type of limitation should not be applied unless the grievance procedure has been invoked or exhausted. In *Christianson* the court held only that an employee who has not invoked that procedure—unlike one who has—need not prevail against the union before he can recover from the employer.[2] That issue, however, is not necessarily related to the choice of a statute of limitations.

If one were nevertheless to adopt the distinction made by the *Christianson* court

---

1. Section 1288 provides in relevant part:

   A petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner.

2. The court said:

   Even if Justice Stewart's contention that an employee must prevail on his claim against his union before he can reach the issue involving his employer constitutes a correct statement of the majority's holding in *Mitchell,* that concept is inapplicable here. Both *Mitchell* and *Hines* [*v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) ] were suits to vacate arbitration awards. When an arbitration decision has been rendered, the interest in finality of that decision is sufficiently strong to warrant clear evidence of a breach of a union's duty of fair representation before the courts should overturn the arbitration award. In the present case, however, the arbitration process was never reached; in fact, the Union never even processed appellant's grievances. Therefore, the concept of finality, which controlled in *Hines* and *Mitchell,* is totally inapposite here.

   681 F.2d at 579–80.

for the purpose of deciding the limitations issue, it would support selecting the shorter arbitration review period. The court's distinction is based on the interest in finality which attaches when an arbitration award has been rendered. But that interest attaches equally to other dispositions of grievances, regardless of the step at which they are made, for all are equally final.[3]

The *Mitchell* Court seems clearly to have had this in mind:

> It is important to bear in mind the observations made in the *Steelworkers Trilogy* that "the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.... The processing ... machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581 [80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409] (1960). Although the present case involves a fairly mundane and discrete wrongful-discharge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. See, *e.g., Humphrey v. Moore,* [375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964)] *supra* (seniority rights of all employees). This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.

451 U.S. at 63–64, 101 S.Ct. at 1564. To the extent that the interest in finality militates in favor of the earliest possible disposition of any attack, there is no discernible difference between grievances terminated at the third step and those taken through the final step. *See United Mine Workers, etc. v. Barnes & Tucker Co.,* 561 F.2d 1093, 1096 (3rd Cir.1977) ("It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties."). Moreover, as a matter of policy, it would be counterproductive to place a premium on extending the process of resolving grievances.

At least one other circuit has taken this view. In *Badon v. General Motors Corp.,* 679 F.2d 93, 98 (6th Cir.1982), an action by an employee against his employer and union to recover pension benefits, the collective bargaining agreement permitted the employer to deny benefits without reference to the grievance procedure. Nevertheless, the court treated the action, since it arose out of the bargaining agreement, as analogous to an appeal from an arbitration decision and initially looked to the state arbitration statute for a limitation period. Because that statute by its terms excluded labor arbitrations, however, the court ultimately applied the limitation period of the Labor Management Relations Act. *Cf. Newton v. Local 801 Frigidaire Local of International Union of Electrical Workers,* 684 F.2d 401 (6th Cir.1982) (citing *Bodan* for its result but ignoring entirely the *Mitchell* analysis).

Plaintiff cites two recent decisions in which the courts declined to apply the *Mitchell* analysis to actions against unions, as distinct from actions against employers. *Hand v. International Chemical Workers Union,* 681 F.2d 1308 (11th Cir.1982); *Flowers v. Local 2602 of United Steel Workers,* 671 F.2d 87 (2d Cir.1982). Their reasoning was based on Justice Stevens' concurring and dissenting opinion in *Mitchell,* in which he noted that only the employer had appealed, the union having accepted the lower court's adverse decision. *Mitchell* therefore necessarily decided only the choice of the limitation statute in actions against employers. In light of Justice Stevens' opinion, however, it is significant that the majority opinion in no way sought to restrict its

---

3. Although the collective bargaining agreement in this case does not explicitly state that resolutions of grievances at any step of the procedure shall be final and binding, that intention is implicit in the provisions allowing appeals to the next step within a specified time.

application to actions against employers. On the contrary, it broadly analogized the claims against both employer and union to actions to vacate arbitration awards.[4] Thus, it seems that the majority left little doubt of its view as to the appropriate limitation period for actions against a union for breach of the duty of fair representation, as well as for actions against employers. This is how the Ninth Circuit read *Mitchell* in the passage from its opinion in *Singer* quoted above, which makes no distinction between the two classes of claims. It would therefore be inappropriate for this Court to adopt the view expressed in *Hand* and *Flowers*.

For the reasons stated, the motion of the defendant unions to dismiss the representation claim is granted.

IT IS SO ORDERED.

---

4. The Court said:

Since the conclusion of the Joint Panel was, under the collective-bargaining agreement, "binding on all parties," respondent was required in some way to show that the Union's duty to represent him fairly at the arbitration had been breached before he was entitled to reach the merits of his contract claim. This, in our view, makes the suit more analogous to an action to vacate an arbitration award than to a straight contract action. 451 U.S. at 62, 101 S.Ct. at 1563.