Francis W. JAMES, Plaintiff,

v.

UNITED AIR LINES, INC., and Air Line Pilots Association, International, Defendants.

Civ. A. No. 81–K–1675.

United States District Court, D. Colorado.

July 26, 1983.

Frederick Yu, Denver, Colo., for plaintiff.

James Linsey, New York City, Hans Stucki, Chicago, Ill., Richard Campbell, Denver, Colo., John A. Criswell, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action by a former pilot against United for breach of contract and wrongful discharge, and against Air Line Pilots Association (ALPA) for breach of its duty of fair representation. Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1337 and the Railway Labor Act, 45 U.S.C. § 151 *et seq.*[1]

In essence, James claims that United breached the collective bargaining agreement then in force between United and its pilots by forcing him to retire at age 60 in January, 1978, and thus wrongfully discharged him solely on account of his age. He further claims that ALPA breached its duty to him of fair representation when it indefinitely suspended his grievance against United in early 1978. This matter is before me now on defendants' separate motions for summary judgment. Since oral argument would add nothing of substance to the delineation of the issues, I am prepared now to rule on both motions.

### ALPA'S MOTION

James's dispute with his union began in 1977 when his bid for a second officer or flight engineer position on a B–747 aircraft was turned down by United. James was then a first officer. He bid for this vacancy specifically to avoid disqualification at age 60 by federal regulations which are applicable only to captains and first officers.[2] When United awarded the position to another pilot with less seniority, James initiated a grievance procedure, pursuant to sec-

---

1. ALPA suggests in its brief that there is no jurisdiction in this court to hear this case. By suing both United and his Union James has created a "hybrid" case within the meaning of *Richins v. Southern Pac. Co.,* 620 F.2d 761 (10th Cir.1980), *cert. denied,* 449 U.S. 110, 101 S.Ct. 918, 66 L.Ed.2d 838 (1981).

2. 14 C.F.R. § 121.383(c) provides:

tions 17 and 18 of the collective bargaining agreement.

The grievance procedure is a three-step process which culminates in a hearing before and decision by the United Air Lines pilot's system board of adjustment. The system board is established in compliance with § 204 of the Railway Labor Act, 45 U.S.C. § 184. Steps one and two of the grievance process are not at issue here, and were concluded adversely to James on March 28, 1978. At each stage his grievance was denied on the grounds that United's retirement and pension plans required him to retire at age 60.

In compliance with the 60-day statute of limitations mandated by § 17(A)(5) of the bargaining agreement, ALPA submitted James's grievance to United's system board on May 25, 1978. On June 5, 1978, the board notified Charles Goldstein, the ALPA representative, and James that it had received and docketed James's grievance and that it would notify them when a hearing date was established. No hearing date was set immediately for James's grievance, because ALPA had suspended the action indefinitely. ALPA did so after reviewing the grounds for James's grievance, a prior, similar grievance, and the United States Supreme Court's decision in *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). ALPA did not advise James of its decision to suspend the grievance, nor did James make independent inquiry until sometime in September, 1981.

After James filed this suit, ALPA rescheduled the grievance for a hearing before the system board on April 12, 1982. Through counsel, James declined to participate in this, the final, step in the grievance process, believing it to be a futile measure. James's grievance is now closed.

In support of its motion for summary judgment, ALPA claims it did not violate

its duty of fair representation to James because its decision to suspend the grievance indefinitely was neither "arbitrary, discriminatory [n]or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). When Goldstein decided to suspend James's grievance, he relied, in part, upon a 1974 award by Professor Archibald Cox in a grievance filed by United pilot Harris S. McMann.

The *Cox* award involved a pilot's complaint of forced retirement at his 60th birthday. In his decision, arbitrator Cox determined that McMann's retirement did not violate any obligations United had under the collective bargaining agreement. McMann's retirement was

> in accordance with an established practice uniformly applied to all members of the bargaining unit.... The practice [complained of] was widely known and firmly established at the time the Pilot's Agreement was negotiated. The United Pilot's negotiators could have required United to bargain about proposed changes. They did bargain about other aspects of the plan. In this sense the negotiators on both sides accepted the practice as a fundamental rule of the industrial jurisprudence governing the bargaining unit. *Cox Award* at 6, *ALPA Exhibit D.*

Goldstein also relied upon the United States Supreme Court's disposition of McMann's suit in the courts. *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). McMann claimed that United's retirement policy violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 601 *et seq.* The Supreme Court determined that the retirement plan was outside the ADEA's ambit, because it was not a subterfuge within the meaning of § 4(f)(2), 29 U.S.C. § 623(f)(2).

Since it relied upon these two prior proceedings, ALPA argues that its decision not to pursue James's grievance was neither

No certificate holder may use the services of any person as a pilot on an airplane engaged

in operations under this part if that person has reached his 60th birthday.

arbitrary, discriminatory nor in bad faith, within the meaning of *Vaca v. Sipes, supra.*

James contends that ALPA's failure to process his grievance and failure to notify him of that decision were arbitrary and in bad faith. In support, he argues that ALPA's executive board made an abrupt policy shift in May, 1978, at the same time Goldstein was evaluating James's grievance. Before that time, ALPA had vigorously championed pilots' rights to remain flying after the age of 60. This action took shape in ALPA's lobbying efforts before congress, various select committees, the F.A.A. and in numerous resolutions passed by its executive board between 1936 and the present. *Plaintiff's exhibit* 20.

In November, 1977, ALPA's board directed a committee to study the effects of pilots down-bidding to second officer status as a way to continue flying after the age of 60. After the committee reported, the board passed the following resolution:

> RESOLVED that it is the position of this Executive Board that grievances to enforce downbidding to Second Officer positions in opposition to provisions of collective bargaining agreements or pension plans not be pursued or supported by the Association. *Plaintiff's exhibit* 5, at 20.

James contends that this shift in policy, as manifested in its failure to prosecute his grievance, overlooked a critical historical fact, the *Cole* award of 1962.

The *Cole* awards came about after the merger of United and Capital Airlines in 1961. Resultant seniority rights of 244 "career flight engineers" employed by United were in dispute. After arbitration, United and ALPA entered into a letter of agreement, the effect of which was to give James and the other career flight engineers "grandfather" rights to flight engineer/second officer seats on United planes. These rights were incorporated by reference into the 1977 United-ALPA collective bargaining agreement. James claims that ALPA's shift in policy and its refusal to consider the *Cole* award are tantamount to bad faith and arbitrary action.

In response to ALPA's reliance on the *Cox* award and *McMann,* James points out that McMann did not rely upon the *Cole* award in his grievance, and that *McMann* (the case) involved a challenge based upon the ADEA, unlike the claims presented here.

■ The parties are not in dispute that the *Vaca v. Sipes* "arbitrary, discriminatory or in bad faith" standard is controlling here, and that summary judgment should be granted only if there is no genuine issue as to material facts. In *Vaca v. Sipes* a union declined to pursue an employee's wrongful discharge claim because it considered it meritless. The Missouri state courts, however, thought the discharge was wrongful and that the union had therefore breached its duty of fair representation by not processing the grievance. The Supreme Court disagreed. The standard by which to judge the charge of unfair representation is whether the union's evaluation was made in good faith and unarbitrarily, and not whether the underlying grievance was meritorious. 386 U.S. at 192–195, 87 S.Ct. at 917–919. A breach of that duty occurs only when the union's conduct is arbitrary, discriminatory or in bad faith. 386 U.S. at 190, 87 S.Ct. at 916. ALPA, quite rightly, points out that "the duty of fair representation does not create freewheeling jurisdiction in the federal courts to reevaluate Union decisions." *Brief* at 17.

Many courts have refused to second-guess the merits of a union's decision. In *Patterson v. Tulsa Local No. 513,* 446 F.2d 205 (1971), the Tenth Circuit refused to find that a union's failure to represent the plaintiff after discharge was arbitrary or in bad faith, where the bumping provision relied upon by the plaintiff had been determined to be unlawful under the National Labor Relations Act.

The Eleventh Circuit recently held that a union must act with reckless disregard for an employee's rights or be grossly deficient in its conduct to constitute a breach. *Har-*

*ris v. Schwerman Trucking Co.,* 668 F.2d 1204 (11th Cir.1982). The court went on to say that a union acts perfunctorily when it ignores a grievance, inexplicably fails to take some required step, or merely gives it cursory attention.

In *Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123 (5th Cir.1980), the Fifth Circuit reversed a trial court's findings of a breach. There, a union committee made a last minute decision to withdraw the employee's grievance. The trial court found that the employee had not been consulted prior to the meeting; that the union representative was openly hostile to the plaintiff in court; that the union representative had advised the committee only of similar *losing* cases; and that the committee told the plaintiff the grievance had been turned down by the arbitrator, when, in fact, it had been withdrawn.

In *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349 (9th Cir.1981), the court found no breach of fair representation in the union's failure to represent the plaintiff in a third arbitration hearing which it considered to be mere attempts at relitigating earlier claims. The court emphasized that negligence by itself is insufficient to prove a breach of fair representation. It also noted:

> Employees have no absolute right to have their cases taken to arbitration.... A union must only take those claims to arbitration which the union believes honestly and in good faith have merit. 652 F.2d at 1349.

This is not to say that courts may never intervene in a dispute between a union and an employee. Numerous cases have found a breach of fair representation where the union acted arbitrarily. *E.g., Robesky v. Qantas Empire Airways, Inc.,* 573 F.2d 1082 (9th Cir.1978) (union's undisclosed failure to file timely plaintiff's grievance and subsequent compromise of it to plaintiff's great detriment (loss of job)); *DeArroya v. Sindicato de Trabajadores Packinghouse, AFL–CIO,* 425 F.2d 281 (1st Cir.1970) (total and inexplicable failure to investigate a series of grievances); *Minnis v. Intern. U., United Auto., Aerospace, Etc.,* 531 F.2d 850 (8th Cir.1975) (failure to process grievance in a timely fashion, failure to investigate, failure to present evidence, failure to notify employee of its intent to drop the grievance).

■ Against this backdrop, I am unable to find that ALPA's handling of James's grievance was arbitrary, discriminatory or in bad faith. After a thorough examination of the voluminous affidavits and exhibits submitted by both parties, I am convinced that ALPA's decision to suspend indefinitely the grievance was in keeping with its newly announced policy of not supporting grievances similar to James's. It is not my place to second-guess that decision. As the resolution of June, 1978 makes clear, the executive board acted in accordance with its interpretation of the provisions of the collective bargaining agreement and pension plan which provide for retirement at age 60. Goldstein's reliance on the *Cox* award and subsequent *McMann* decision were justified, notwithstanding James's attempt to distinguish his case from both. *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1355 (9th Cir. 1981).

I am acutely aware that a trial court must exercise extreme caution in summary judgment proceedings where intent and motive are at issue. Absent additional factual support for James's assertion of bad faith, however, I am not prepared to say that a two year suspension, in and of itself, amounts to bad faith, discrimination or arbitrary treatment. I do have some concern for ALPA's failure to notify James of its decision to suspend the grievance. James, however, has not shown any prejudice as a result of this delay, nor that the suspension was intentional. I emphasize that it was only a delay, not a dismissal for failure to file in a timely fashion. Although James thought it a futile exercise, the final step in the grievance process was still available to

him in April, 1982. On the record before me, ALPA's failure to notify James of its decision to suspend indefinitely the grievance amounts to no more than negligence. ALPA's motion for summary judgment is therefore granted.

## UNITED'S MOTION

Before reaching the merits of United's motion for summary judgment, I must decide what impact ALPA's decision has on this court's jurisdiction. James's claims against United are twofold, for breach of contract and for wrongful dismissal on the basis of age. His theory, as I understand it, is as follows.

■■■■ By virtue of the collective bargaining agreement and the 1962 *Cole* award, he was improperly denied the second officer's position on which he unsuccessfully bid in 1977. For purposes of this motion, United concedes that the position was awarded to one with less seniority than James. Assuming that United improperly denied the position to James, he argues that as a second officer he need not retire at the age of 60, since neither F.A.A. regulations nor the collective bargaining agreement require second officers to retire at 60. His forced retirement, he says, amounts to a discharge solely on the basis of age, in contravention of the ADEA's policies and state statutes.[3] In passing, I note that James does not claim a specific statutory violation of the ADEA, since he failed to file a timely suit under it. Rather, he suggests that he has a common law right of action for wrongful discharge in violation of public policy.

United's position is that ALPA's dismissal requires dismissal of the breach of contract and wrongful discharge claims because they are "minor" claims between an employee and a carrier which by statute and case law are exclusively reserved to the system board of adjustment. 45 U.S.C. § 153 First (i); *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978).

45 U.S.C. § 153 First (i) provides, in pertinent part:

> The disputes between an employee . . . and a carrier . . . *growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . .* shall be handled in the usual manner . . . but the disputes may be referred . . . to the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes. [Emphasis added.]

Except in cases of fraud or failure to comply with the requirements of the statute, an award by the system board of adjustment is final and binding on the parties. 45 U.S.C. § 153 First (p). As the United States Supreme Court put it:

> In enacting this legislation, Congress endeavored to promote stability in labor-management relations . . . by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements * * * Congress considered it important to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts. *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

By the plain language of § 153, the present dispute is one which arises out of the interpretation of the collective bargaining agreement between ALPA, on behalf of James, and United. James claims that the agreement permits him to bid, at age 60, for a position as a second officer and to continue flying past the normal retirement age. United disagrees. I could not decide whether James was discharged solely on account of his age without first settling the

---

**3.** In an ADEA suit, James's position has been upheld by a jury verdict. *Monroe v. United Airlines, Inc.,* No. 79 C 360 and No. 79 C 1572 (N.D.Ill.) (Order of Reinstatement, January 12, 1983).

underlying dispute about the proper interpretation of the collective bargaining agreement.

I decline to do so. This is not a "major" dispute as that term has been defined. The contract is reasonably susceptible to the interpretations sought by both United and James, and does not arise out of the formation or change of a collective bargaining agreement. *Detroit & Toledo Shore Line R. Co. v. United Transp. Union,* 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969); *Independent Federation of Flight Attendants v. Trans World Airlines, Inc.,* 655 F.2d 155 (8th Cir.1981). United's motion for summary judgment is therefore granted.

IT IS HEREBY ORDERED that the defendants' motions for summary judgment are granted.